IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| JOEL HAGEMAN, on behalf of himself and others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | CV-13-50-DLC-RWA |
| vs. | ) ) ) ) | JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| AT&T MOBILITY LLC, | ) ) | |
| Defendant. | ) ) | |

Plaintiff Joel Hageman ("Plaintiff") and Defendant AT&T Mobility LLC ("ATTM" and, collectively with Plaintiff, the "Parties") hereby move for the entry of an Order granting preliminary approval of their Settlement Agreement,[1] attached as Exhibit A to this motion. The Parties respectfully request that the Court preliminarily approve the terms of the Settlement Agreement; conditionally certify a class for purposes of settlement (the "Settlement Class"); appoint Plaintiff as the Settlement Class Representative; appoint the law firms of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C. as settlement Class Counsel; approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement; and schedule a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement. A proposed order, in the form approved by the Parties, is included as Exhibit 4 to the Settlement Agreement and is submitted herewith for the Court's consideration.

## I. INTRODUCTION

---

[1] Capitalized terms have the same meaning as defined in the Settlement Agreement.

1

Plaintiff Joel Hageman brought this putative class action in April 2013,[2] alleging on behalf of himself and a nationwide class that ATTM had violated the federal Telephone Consumer Protection Act (the "TCPA") by placing calls using an automatic telephone dialing system and/or an artificial or prerecorded voice message to cellular telephone numbers without the prior express consent of the call recipients. Plaintiff claims those calls violated 47 U.S.C. § 227(b)(1)(A)(3) and that the recipient of each call is therefore entitled to statutory damages of $500 for each call made in violation of the TCPA.[3]

ATTM contends that the calls made to members of the alleged class were lawful, because, *inter alia*, many members of the alleged class consented to receiving such calls from ATTM by providing their cellular telephone number as a can-be-reached number for ATTM's customer accounts; the dialing systems used by ATTM and by the OCAs who acted on behalf of ATTM did not constitute an "automatic telephone dialing system" as that term is defined in the TCPA, 47 U.S.C. § 227(a)(1); and the TCPA, as applied to ATTM in this case, infringes its rights under the First and Fourteenth Amendments to the United States Constitution. Moreover, ATTM contends that Plaintiff cannot represent a litigation class since determining whether any can-be-reached numbers other than his own were called without the consent of the number's owner would require, among other things, an individualized inquiry into the circumstances surrounding how that number came to be listed as a can-be-reached number. ATTM also contends that any calls it made to these can-be-reached numbers were made in a good-faith belief that consent had been granted for each call and, furthermore, any errors that might have been made were inadvertent. ATTM continues to deny liability in this case.

---

[2] At the time, the case was captioned *Hageman and Dale v. AT&T Corp. et al*. On June 5, 2013, Plaintiff amended his complaint to name ATTM as the sole defendant (Dkt. #8) and on February 18, 2014, this Court dismissed without prejudice the claims of Stephan Dale pursuit to an agreement between the Parties. (Dkt # 47).

[3] Plaintiff also seeks enhanced damages of up to $1500 per call for any violations of the TCPA that were made "willfully or knowingly[.]" 47 U.S.C. § 227(b)(3).

The Parties have vigorously litigated the case and thoroughly investigated the facts. ATTM produced more than 40,000 pages of documents through formal discovery and responded to additional information requests in connection with the mediation process. Among the documents ATTM produced are a set of voluminous spreadsheets which contain relevant account information and calling data. In addition to reviewing this extensive document production, Plaintiff conducted an exhaustive corporate representative deposition of ATTM. Plaintiff then provided an expert report in support of class certification, and ATTM has deposed Plaintiff's expert.

While ATTM prepared its response to Plaintiff's expert report, the Parties agreed to engage in mediated settlement discussions. The Parties exchanged detailed mediation statements which outlined their arguments in light of the discovery record and then engaged in intensive mediation on June 24, 2014 with the Hon. Morton Denlow of JAMS, an experienced mediator and former Magistrate Judge of the United States District Court for the Northern District of Illinois. After a full day of negotiations, the Parties reached an agreement in principle to settle the claims asserted against ATTM in this case. Subsequent arm's-length negotiations have produced an agreement on the specific terms set forth in the Settlement Agreement. The Parties now present those terms for the Court's preliminary approval.

## II. TERMS OF THE SETTLEMENT

1. <u>Class Definition</u>

    The Settlement Class is defined to include:

    > all persons who, during the Class Period, received one or more Calls made by ATTM or by an OCA on behalf of ATTM on their cellular telephone, where (a) the person was not an ATTM customer at the time of the call and (b) the cellular telephone number was listed as a can-be-reached number on two or more

>ATTM accounts that are not related by name, address, or other personal identifying information.

Excluded from the Settlement Class are ATTM customers as of the time ATTM dialed their cellular telephone number. Those individuals are precluded from participating in this litigation because ATTM's service agreements contained both arbitration provisions and consent provisions during all times covered by the Class Period. Based on their review of the spreadsheets detailing the calls made by ATTM or by an OCA acting on behalf of ATTM, the Parties estimate that there are approximately 16,000 members of the Settlement Class.

2. Settlement Benefits to Settlement Class Members

Under the terms of the Settlement Agreement, each Class Member can claim a share of a $45,000,000 Settlement Fund. A Class Member shall receive payment for each Call he or she received from ATTM or from an OCA acting on behalf of ATTM during the class period by submitting a short Claim Form. The size of the per-Call payment shall be determined on a pro rata basis (up to $500 per call), after the Attorney's Fees and Costs, any Incentive Award to Named Plaintiff, and any Settlement Administration Costs are deducted from the Settlement Fund and the Settlement Administrator reviews all Claim Forms to determine a final number of claimants.

3. Claim Form

To receive any Settlement benefits, Class Members will be required to submit a short Claim Form certifying that they are (or at the relevant time were) the account holder for the telephone number dialed by ATTM or by an OCA acting on behalf of ATTM, and that they were not a customer of ATTM at the time they received the calls in question. A postage-prepaid postcard Claim Form will be included with the Notice. Claim Forms will be considered timely if

they are submitted electronically or postmarked no later than 21 days before the date set by this Court for the Final Approval Hearing.

4. <u>Settlement Class Representative and Class Counsel; Attorney's Fees and Incentive Award</u>

The Settlement Agreement provides that, for purposes of settlement, named Plaintiff Joel Hageman will be appointed as Settlement Class Representative and that the law firms of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C. (who have represented Plaintiff throughout this litigation) will be appointed as Settlement Class Counsel. ATTM will not oppose an application submitted by Plaintiff or Settlement Class Counsel for attorney's fees and costs up to one-third of the Settlement Fund ($15,000,000) and for an individual incentive award for Mr. Hageman of up to $20,000. Any award of Attorney's Fees and Costs or an Incentive Award shall be paid from the Settlement Fund prior to the pro rata distribution of benefits to the Settlement Class.

5. <u>Releases</u>

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice. Plaintiff and all members of the Settlement Class who do not timely opt out will release ATTM and any OCA acting on behalf of ATTM from all claims regarding the Calls made by ATTM which relate to the use of automated dialing systems and/or prerecorded voice messages as well as all claims that were or could have been asserted by Plaintiff in this litigation.

6. <u>Notice</u>

Written notice of the proposed settlement will be provided to the Settlement Class via mail, sent no later than 30 days after the Court's entry of an order granting preliminary approval of settlement. The mailing address of each Class Member will be determined by performing a

reverse lookup of each telephone number that received a Call from ATTM where the number is eligible for membership in the Settlement Class. The name and address data used to perform this query will be updated by the Claims Administrator using directory assistance services available through the United States Postal Service. Additionally, publication notice will be provided in one issue of *People* magazine.

7. Opt-Out Rights

Members of the Settlement Class can opt out of the class by sending a written request for exclusion to the Claims Administrator. So-called "class" or "mass" opt-outs will not be permitted. Any individual opt-out notices must be postmarked no later than 21 days before the date set by this Court for the Final Approval Hearing. Also by that time, any Class Member who wishes to object to the Settlement Agreement must file with the Court and serve upon the Parties a written notice of the objections, along with supporting papers setting forth the objector's grounds for objection.

8. Proposed Deadlines

The Settlement Agreement provides that the Parties will file their briefs in support of final approval of the Settlement Agreement 14 days before the deadline to opt out or object to the Settlement and that the Parties will file their responses to any objections no later than 7 days before the date set by this Court for the Final Approval Hearing. The following table sets forth the important deadlines proposed in the Settlement Agreement:

| **Event** | **Scheduled Date** |
|---|---|
| Notice mailing deadline | 30 days after entry of Preliminary Approval Order |
| Parties' briefs in support of the Settlement due | 14 days prior to the deadline to opt out or object |
| Last day for Class Members to opt out of Settlement | 21 days prior to the Final Approval Hearing |

| Last day for objections to the Settlement to be filed with the Court | 21 days prior to the Final Approval Hearing |
|---|---|
| Last day to submit a Valid Claim Form | 21 days prior to the Final Approval Hearing |
| Attorney's Fees and Costs application due | 14 days prior to the deadline to opt out or object |
| Incentive Award application due | 14 days prior to the deadline to opt out or object |
| Parties file responses to objections, if any | 7 days prior to the Final Approval Hearing |
| Final Approval Hearing | No earlier than 90 days after the Notice mailing deadline |

Under this proposed schedule, Class Members have at least 69 days to decide whether or not to opt out or file objections to the terms of the Settlement Agreement and at least 14 days to decide whether or not to object to Class Counsel's Attorney's Fees and Costs Application.

### III. ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

In this Motion, the Parties request that the Court: (i) preliminarily approve the terms of the Settlement Agreement; (ii) conditionally certify the Settlement Class for purposes of settlement; (iii) appoint Plaintiff as the Settlement Class Representative; (iv) appoint the law firms of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C as Class Counsel; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances." (Fed. R. Civ. P. 23(c)(2)(B)); and (vi) schedule a final approval hearing in accordance with the deadlines proposed in the Settlement Agreement. The Settlement Agreement represents the Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of absent class members. Accordingly, the Settlement Agreement meets the threshold requirements for preliminary approval, especially in light of the "strong judicial policy that favors settlements [of] complex class action litigation."

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982)).[4]

## A. The Settlement Agreement Should Be Preliminarily Approved

A motion for preliminary approval of a class action settlement does not require the Court to make a conclusive finding that the terms are "fundamentally fair, adequate, and reasonable." *Officers for Justice,* 688 F. 2d at 625 (discussing the "universally applied standard" for final approval of proposed class-action settlements). That issue is appropriate for the Court to decide only after a formal fairness hearing, where class members have the opportunity to be heard and to present any objections to settlement. At the preliminary approval stage,

> [i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the Court should direct that the notice be given to the class members of a formal fairness hearing.

*In re: Portal Software Inc. Sec. Litig,*, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007) (quoting *Schwartz v. Dallas Cowboys Football Club*, 157 F. Supp. 2d 561, 570 n. 12 (E.D. Pa. 2001)); *accord Harris v. Vector Mktg. Corp.*, 2011 WL 1627973 at *7 (N.D. Cal. Apr. 29, 2011) (collecting cases). The Parties' Settlement Agreement is the product of serious and informed arm's-length negotiations and falls well within "the range of possible approval" sufficient to warrant its preliminary approval.

1. <u>The Settlement Agreement Is The Result of Engaged, Arm's-Length Negotiations Overseen By An Experienced Mediator</u>

The Court's primary responsibility on a motion for preliminary approval is to ensure that the settlement agreement does not appear to be "the product of fraud or overreaching by, or

---

[4] Neither formal notice to potential class members nor a hearing is required to preliminarily approve a settlement class and this Court may grant such relief on the basis of the Parties' Motion and may conduct an informal hearing in chambers as necessary. *See Manual for Complex Litig.* (Fourth) § 21.632 .

8

collusion between, the negotiating parties." *Officers for Justice*, 688 F. 2d at 625. Accordingly, "[t]here is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11:41. Such a presumption is appropriate here.

ATTM has vigorously challenged whether Plaintiff has stated a claim for relief or could certify a class in this Action. To support his claim, Plaintiff conducted extensive fact discovery into the purpose and operation of the Calls made by ATTM or by an OCA acting on behalf of ATTM, as well as into the nature of the can-be-reached numbers listed on ATTM's account records. This discovery resulted in the production of over 40,000 pages of material, including voluminous call data spreadsheets, and detailed and substantive interrogatory responses. Plaintiff thoroughly analyzed this data in the report of his expert, Robert Biggerstaff, whose conclusions were tested at a deposition conducted by ATTM's counsel. This extensive record was relied upon by both Parties in the submissions they exchanged in advance of their mediation. When the Parties met in person with Judge Denlow, he facilitated productive discussions that thoroughly tested the Parties' respective theories of the case.

Thus, the Parties' agreement to settle this litigation reflects well-informed and engaged arm's-length bargaining with the assistance of a highly experienced mediator. Plaintiff's counsel have litigated numerous class actions, including cases involving the legality of calls made to cellular telephone numbers under the TCPA. For its part, ATTM is represented by experienced counsel who have thoroughly investigated Plaintiff's claims and assessed their potential value. The Settlement Agreement is not the product of collusion; to the contrary, it reflects the independent judgment of counsel for both Parties that its terms are fair and reasonable under the circumstances.

2. <u>The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation</u>

    a. <u>Plaintiff's Assessment of the Risks</u>

In agreeing to a Settlement Fund of $45,000,000, Plaintiff and his counsel have considered the risks inherent to litigation and the various defenses available to AT&T. The reality that Plaintiff and the class members could end up recovering nothing or only a fraction of the settlement benefits if the Court did not certify a class or if Plaintiff failed to prevail at trial was significant enough to convince Plaintiff and Plaintiff's counsel that the benefits of the settlement reached with ATTM outweigh the gamble of continued litigation.

Plaintiff and his counsel knew that going forward there was a risk that the Court would decline to certify this case as a class action. As described above, a central issue in this case is whether Class Members whose numbers were listed as can-be-reached numbers provided express consent for ATTM to contact them. Courts have split in other cases under the TCPA regarding whether questions of consent require an individualized inquiry and thus prevent class certification. *Compare*, *e.g., Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted); *Jamison v. First Credit Services, Inc.*, 2013 WL 1248306 at *13 (N.D. Ill. March 28, 2013) (declining to certify TCPA class where individualized review would be required to "determin[e] whether any particular class member gave Honda his or her cellphone number"); *with Green v. Service Master*, 2009 WL 1810769 at *2 (N.D. Ill. 2009) ("[T]he question of consent may rightly be

understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted); *Saf-T-Gard International, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 315 (N.D. Ill. 2008) (holding that where "some number of faxes were sent on defendant's behalf (with or without defendant's explicit authorization), potentially to tens of thousands of recipients . . . reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue") (internal citations omitted); *Agne v. Papa John's Intern.*, *Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification."). While Plaintiff and his counsel believe the facts of this case make class certification appropriate, they are also aware that ATTM was prepared to present facts and expert witness testimony to support its position that class certification was inappropriate because individualized issues predominate. In short, Plaintiff and his counsel were aware of the risk that the Court could have denied Plaintiff's motion for class certification, leaving Plaintiff with only the pursuit of his individual claim against ATTM.

Finally, as in any case, there is a substantial risk of losing at trial. And, even if Plaintiff did prevail, any recovery could be delayed for years by an appeal. In contrast, the Settlement Agreement provides substantial relief to Settlement Class members without further delay.

      b. <u>ATTM's Assessment of the Risks</u>

Had the Parties not settled, ATTM would have continued to vigorously defend itself and would have opposed class certification. As described above, ATTM strongly believes that individual consent issues make this case unsuitable for class treatment. Had the litigation continued, ATTM would have also argued that a substantial portion of the calls allegedly made

by ATTM or by an OCA acting on behalf of ATTM were not made using an automatic telephone dialing system, as that term is defined in the TCPA, and thus cannot support liability under the statute. ATTM was prepared to assert other significant defenses as well.

Nevertheless, ATTM recognizes that there are substantial uncertainties in the law and risks inherent in continuing this litigation. Class litigation also imposes difficult burdens on managers' limited time. Moreover, ATTM recognizes that even if it ultimately prevailed in this litigation, it will have spent a large sum for defense costs and will have expended other important resources.

3. <u>The Settlement Agreement Does Not Give Preferential Treatment to Any Segment of the Class</u>

The Settlement Agreement allows each Class Member to claim a pro rata share of the Settlement Fund, taking one "share" for each Call he or she received from ATTM or from an OCA acting on behalf of ATTM. This allocation of damages is appropriate because the TCPA allows for statutory damages for each call made in violation of the statute, 47 U.S.C.A. § 227(b)(3)(B), and thus Class Members will be claiming in direct proportion to their total potential damages.

The Parties have also agreed that Mr. Hageman may request an Incentive Award of up to $20,000. Plaintiff believes that Mr. Hageman's right to seek an incentive award for bringing and litigating this case on behalf of the class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litig.* (Fourth) § 21.62 n.971 (2004) (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). ATTM does not oppose an incentive award to Mr. Hageman as provided in the Settlement Agreement.

4. <u>The Settlement Agreement Provides a Substantial Benefit to Class Members and Falls Within a Range of Possible Approval</u>

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F. 2d at 628 (citations omitted). Here, the Settlement Agreement potentially allows for recovery up to $500 per Call, depending on the number of total claims made against the Settlement Fund. Moreover, the $45,000,000 which ATTM would make available in a Settlement Fund is reasonable in light of other common-fund settlements under the TCPA that have recently been approved within the Ninth Circuit as fundamentally fair, reasonable, and adequate. *See*, *e.g.*, *Rose v. Bank of America Corp.*, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014) (approving a $32,000,000 fund).

**B.     The Settlement Class Should Be Provisionally Certified for the Limited Purpose of Settlement**

The Parties request that the Court provisionally certify the Settlement Class for settlement purposes only.[5] Provisional certification will permit the Claims Administrator to provide notice of the proposed settlement to the Settlement Class to inform them of the existence and terms of the Settlement Agreement, their right to opt out or object, and the date, time, and location of the formal fairness hearing.

The adequacy-of-representation requirement is satisfied because Plaintiff's interests are co-extensive with, and not antagonistic to, the interests of the Settlement Class. *See* Fed. R. Civ. P. 23(a)(4); *see also Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (representatives must "fairly and adequately" protect the interest of the class). Further, Plaintiff is represented by qualified and competent

---

[5] ATTM, of course, continues to maintain the position that no litigation class could be certified in this case because, among other things, individual issues predominate.

counsel who have extensive experience and expertise in prosecuting complex class actions, including TCPA and other consumer cases.

### C. The Form and Content of Notice Proposed By the Parties Is the Best Notice Practicable Under the Circumstances

Once a settlement class is certified, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).[6] Notice must plainly inform class members of: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment." *Id.* Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974).

The Parties believe the Settlement Agreement establishes a notice procedure that satisfies these standards. First, the proposed Notice (Exhibit 3 to the Settlement Agreement) clearly communicates the information required by Rule 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a process that the Parties anticipate will provide individual notice by mail to the vast majority of Class Members. ATTM's records contain the telephone numbers of all of the Calls made to the Settlement Class, as well as the date and time of those calls. The Claims Administrator will use those telephone numbers to perform a reverse lookup of class members'

---

[6] Fed. R. Civ. P. 23(e)(1) also requires that class members receive notice of a proposed settlement "in a reasonable manner." Here, where the Parties propose to give notice of both certification *and* proposed settlement, "notice of certification and of the proposed settlement are properly combined but must satisfy the requirement of Rule 23(c)(2)." *Thomas v. NCO Fin. Sys. Inc.*, 2002 WL 1773035 at *7 (E.D. Pa., July 31, 2002) (citations omitted).

14

current or last-known address information, and will then cross-reference this information with the United States Postal Services' change of address database to confirm its accuracy. In addition, publication notice will be provided in an issue of *People* magazine to supplement the direct notice.

## IV. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter their proposed Order:

1. Preliminarily approving the terms of the Parties' Settlement Agreement;
2. Conditionally certifying the Settlement Class for limited purposes of settlement;
3. Appointing Plaintiff as Settlement Class Representative;
4. Appointing the law firms of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C as Class Counsel;
5. Approving the form, content and method of delivering notice to the Settlement Class set forth in the Parties' Settlement Agreement and in the exhibits thereto; and
6. Scheduling a final approval hearing in accordance with the deadlines provided in the Settlement Agreement.

RESPECTFULLY SUBMITTED this 30th day of September, 2014

| ATTORNEYS FOR PLAINTIFFS | ATTORNEYS FOR DEFENDANT |
|---|---|
| By: /s/ John Heenan | By: /s/ Steven R. Milch |
| John Heenan | Steven R. Milch |
| Bishop & Heenan | Crowley Fleck PLLP |
| 1631 Zimmerman Trail | 490 N. 31 St. Suite 500 |
| Billings, MT 59102 | Billings, MT 59101-2529 |
| (406)-839-9091 (Tel) | 406-(252)-3441 |
| (406)-839-9092 (Fax) | smilch@crowleyfleck.com |
| john@bishopandheenan.com | |

Keith J. Keogh
Keogh Law LTD
55 W. Monroe St. Suite 3390
Chicago, IL 60603
(312)-726-1092 (Tel.)
(312)-726-1093 (Fax)
Keith@keoghlaw.com

Benjamin R. Bingham
Bingham & Lea, P.C.
319 Maverick St.
San Antonio, TX 78212
(210)-224-1819 (Tel.)
(210)-224-0141 (Fax)
ben@binghamandlea.com

Theodore A. Livingston
John E. Muench
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
(312)-782-0600
(312)-702-7711
tlivingston@mayerbrown.com
jmuench@mayerbrown.com