# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | | |
|---|---|---|
| JOEL HAGEMAN,<br>on behalf of himself and others<br>similarly situated, | )<br>)<br>) | |
| | ) | CV-13-50-DLC-RWA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **CLASS ACTION SETTLEMENT** |
| | ) | **AND RELEASE** |
| AT&T MOBILITY LLC, | ) | |
| | ) | |
| Defendant. | ) | |

It is hereby stipulated and agreed to by and between the undersigned Parties, subject to the approval of the Court, that the settlement of this Action shall be effectuated pursuant to the terms and conditions set forth in this Settlement Agreement.

## ARTICLE I - RECITALS

A.    **WHEREAS,** on or about April 9, 2013, Plaintiffs filed an action entitled *Joel Hageman and Stephan Dale v. AT&T Corp. et al.*, in the United States District Court for the District of Montana, Billings Division.  On or about June 5, 2013, Plaintiffs filed a First Amended Complaint, which named AT&T Mobility LLC ("ATTM") as the defendant in the Action and which dismissed AT&T Corp., AT&T Inc. and AT&T Wireless Data Inc.  On or about February 18, 2014, Stephan Dale was dismissed from the Action without prejudice, leaving Joel Hageman as the sole named plaintiff;

B.    **WHEREAS,** the Action alleges, on behalf of Joel Hageman and on behalf of a putative nationwide class, that ATTM violated the federal Telephone Consumer Protection Act (the "TCPA") by placing calls using an automated telephone dialing system or a prerecorded

voice message to cellular telephones without the express consent of the owner of those cellular telephone numbers;

C.      **WHEREAS,** counsel for the Parties have investigated the facts relating to the claims alleged and the underlying events in the Action (including reviewing voluminous records produced through formal discovery and engaging in an informal exchange of information through the mediation process), have made a thorough study of the legal principles applicable to the claims asserted in the Action, and conducted a thorough assessment of the strengths and weaknesses of their respective cases;

D.      **WHEREAS,** counsel for the Parties have engaged in extensive arm's-length negotiations concerning the settlement of the claims asserted in the Action, including mediation conducted under the guidance of the Hon. Morton Denlow of JAMS, an experienced mediator who served as a magistrate judge for the Northern District of Illinois before his retirement from the federal bench;

E.      **WHEREAS,** ATTM, without admitting any liability, fault or wrongdoing, desires to settle the Action and the claims asserted in the Action, on the terms and conditions set forth herein, for the purpose of avoiding the burden, expense, and uncertainty of continuing litigation, for itself and its customers, and for the purpose of putting to rest the controversies engendered by the litigation;

F.      **WHEREAS,** Mr. Hageman and counsel for Mr. Hageman, on behalf of the Settlement Class, have concluded, based upon their investigation, and taking into account the contested issues involved, the expense and time necessary to prosecute the Action through trial, the risks and costs associated with further prosecution of the Action, the uncertainties of complex litigation, and the substantial benefits to be received pursuant to this Settlement Agreement, that

2

a settlement with ATTM on the terms set forth herein is fair and reasonable and in the best interest of Mr. Hageman and the Settlement Class;

G.    **WHEREAS,** Mr. Hageman and counsel for Mr. Hageman, on behalf of the Settlement Class, have agreed to settle the Action with ATTM on the terms set forth herein and to have judgment entered pursuant to this Settlement Agreement without trial or adjudication of any issue of fact or law and without this Settlement Agreement, including any exhibits thereto, constituting any evidence against, or any admission by, any Party with respect to liability, fault, or any other issue raised in the Action.

**NOW, THEREFORE,** it is hereby stipulated and agreed that, in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, and subject to the approval of the Court, the Action shall be fully and finally settled and dismissed with prejudice under the following terms and conditions.

## ARTICLE II - DEFINITIONS

Unless defined elsewhere in this Settlement Agreement, as used in this Settlement Agreement and the related documents attached hereto as exhibits, the terms set forth below shall have the meanings set forth below.  The singular includes the plural and vice versa.

1.    "Action" means this lawsuit, *Joel Hageman v. AT&T Mobility LLC*, 13-cv-50-DLC-RWA (United States District Court for the District of Montana).

2.    "ATTM" or "Defendant" means defendant AT&T Mobility LLC and all AT&T entities, subsidiaries, affiliates, agents, identified independent contractors, and identified vendors, including their predecessor and successor entities and related entities, that participated in making the Calls, as defined below or in any other act or omission alleged in the Complaint to have been wrongful.

3.     "Attorney's Fees and Costs" means all fees and costs to be awarded pursuant to the settlement of this Action.

4.     "Benefit Check" means the negotiable check to be sent to those Class Members who shall receive the Claimant Payment pursuant to Article III, section 1(b) below.

5.     "Calls" means any collection call attempt made by or on behalf of ATTM to the wireless telephone numbers associated with a member of the Settlement Class, where the record of such call attempt includes a disposition code indicating that a connection could have been made to the cellular telephone number of the Class Member.

6.     "Claim Form" means the form by which members of the Settlement Class may submit a claim and which may entitle such persons to receive a Benefit Check.  The Claim Form will be in the form of and contain text substantially the same as Exhibit 1 to this Settlement Agreement.

7.     "Claimant Payment" means the pro rata distribution up to $500 per call as described in Article III, section 1(c), to be paid from the Settlement Fund to each Class Member who submits a Valid Claim Form, as described in Article III, section 1(b) below.

8.     "Class" means the "Settlement Class," as defined below.

9.     "Class Counsel" means, collectively, the law firms of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C.

10.     "Class Member" means a member of the Settlement Class.

11.     "Class Period" means the period from April 9, 2009 to April 1, 2014.

12.     "Counsel for the Defendant" or "Defendant's Counsel" means the law firms of Crowley Fleck PLLP and Mayer Brown LLP.

13.     "Court" means the United States District Court for the District of Montana.

4

14.     "Effective Date" means the first business day after the Court has entered a Final Approval Order and Judgment, in the form of Exhibit 2 in all material respects, and that Final Approval Order and Judgment has become Final.

15.     "Final" means that the Final Approval Order and Judgment has been entered on the docket in the Action and (a) the time to appeal from such order and judgment has expired and no appeal has been timely filed or (b) if an appeal from such order and judgment has been filed, it has finally been resolved and has resulted in an affirmance of the Final Approval Order and Judgment or (c) the Court, following the resolution of any appeal from the Final Approval Order and Judgment, enters a further order or orders approving settlement on the terms set forth herein, and either no further appeal is taken from such order(s) or any such appeal results in affirmation of such order(s).

16.     "Final Approval Hearing" means the hearing at which the Court shall be asked to determine whether to grant final approval to this Settlement Agreement, consider any timely objections to this Settlement Agreement, authorize the entry of a final judgment, and dismiss the Action with prejudice.

17.     "Final Approval Order and Judgment" means the order, substantially in the form of Exhibit 2 attached hereto, in which the Court certifies the Settlement Class, grants final approval of this Settlement Agreement, authorizes the entry of a final judgment, and dismisses the Action with prejudice.

18.     "Incentive Award" means the payment to be made to the Named Plaintiff pursuant to Article VI, section 2(a-d) of this Settlement Agreement.

19.     "Named Plaintiff" means Joel Hageman.

20.     "Notice" means written notice, substantially in the form of Exhibit 3 hereto, provided to Settlement Class members pursuant to Article IV, section 3 of this Settlement Agreement.

21.     "OCA" means any outside collection agency or other person or entity who contacted or attempted to contact a Class Member on his or her cellular phone to collect a debt on behalf of ATTM during the Class Period, as well as any agent, affiliate, independent contractor, successor, assign, or other party acting on behalf of any such outside collection agency.  The term "OCA" is limited to the following outside collection agencies: Accord Creditor Services, LLC (f/k/a Alliant Law Group), AFNI, Inc., Allied Interstate, Inc., Bureau of Collection Recovery, LLC, The CBE Group, Inc., Credit Bureau Collection Services, Inc. (d/b/a CBCS), Credit Control Services, Inc., Diversified Consultants, Inc., Enhanced Recovery Company, LLC (f/k/a Enhanced Recovery Corporation), ER Solutions, Inc. (a/k/a Convergent), EOS-CCA (a/k/a Collecto, Inc. d/b/a Collection Company of America), Franklin Collection Services, Inc.,  Gatestone & Co. International Inc., HOVG, LLC (d/b/a Bay Area Credit Services), I.C. System, Inc., Integrity Solution Services, Inc. (f/k/a Pinnacle Financial Group), MRS BPO, LLC, Nationwide Recovery Services, Ltd., NCO Financial Systems, Inc., Receivables Performance Management, LLC,  Southwest Credit Systems, L.P., Sunrise Credit Services, Inc., and Virtuoso Sourcing Group, LLC (f/k/a First Revenue Assurance).

22.     "Parties" means the named parties and the Settlement Class.

23.     "Preliminary Approval Order" means the order, substantially in the form of Exhibit 4 attached hereto and described in Article IV, section 2 below, in which the Court, *inter alia,* preliminarily certifies the Settlement Class, grants its preliminary approval to this Settlement Agreement and authorizes dissemination of Notice to the Settlement Class.

24.     "Release" means the releases set forth in Article V of this Settlement Agreement.

25.     "Released Persons" shall mean ATTM, as that term is defined in Article II, section 2 above and any OCA acting on behalf of ATTM, as that term is defined in Article II, section 21 above.

26.     "Settlement Administration Costs" means any and all costs incurred in administering the Settlement, to be paid exclusively from the Settlement Fund, including but not limited to, the costs of disseminating all Notice and Claim Forms, publishing notice, administering and maintaining the Settlement Website, processing Claim Forms, and providing the Benefit Checks to Class Members who submit a Valid Claim Form, but specifically excluding all class benefit payments, payment of the Incentive Award, and payment of the Attorney's Fees and Costs.

27.     "Settlement Administrator" means an experienced third-party entity in the business of class action settlement administration as may be selected by mutual agreement of the Parties, or in the absence of such agreement, approved by the Court.

28.     "Settlement Agreement" or "Settlement" or "Settlement Agreement and Release" or "Agreement" each mean this settlement agreement and release, including the attached exhibits.

29.     "Settlement Class" means all persons who, during the Class Period, received one or more Calls made by ATTM, or by an OCA on behalf of ATTM, on their cellular telephone, where (a) the person was not an ATTM customer at the time of the call and (b) the cellular telephone number was listed as a can-be-reached number on two or more ATTM accounts that are not related by name, address, or other personal identifying information.  The parties agree that there are approximately 16,000 unique telephone numbers associated with the Settlement

Class.  Excluded from the Settlement Class are the following: (1) any trial judge that may preside over this case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) any OCA covered by the Settlement Agreement, as well as any parent, subsidiary, affiliate, or control person of such OCAs and the officers, directors, agents, servants or employees of such OCAs; and (4) the immediate family of any such person(s).

   30.  "Settlement Class Representative" means the Named Plaintiff, Joel Hageman.

   31.  "Settlement Fund" means the forty-five million dollar ($45,000,000) total aggregate amount that ATTM will become obligated to pay by operation of this Settlement Agreement, if it becomes Final.  This Settlement Fund constitutes ATTM's exclusive payment obligation under this Settlement Agreement and includes: (a) the Claimant Payment to Class Members who submit a Valid Claim Form; (b) the Attorney's Fees and Costs; (c) the Incentive Award;  (d) the Settlement Administration Costs and (e) any payment to one or more charitable organizations pursuant to the procedures described in Article III, section 1(d) or Article III, section 3(f).

   32.  "Settlement Fund Deduction" means all amounts potentially to be paid from the Settlement Fund, other than the Claimant Payment to be paid to each Class Member who submits a Valid Claim Form, and includes: (a) the Attorney's Fees and Costs; (b) the Incentive Award and (c) the Settlement Administration Costs.

   33.  "Settlement Website" means the Internet site to be administered and maintained by the Settlement Administrator concerning the Settlement.

   34.  "Successful Opt-Out" means a person who, pursuant to Article IV, section 4 of this Settlement and Fed. Civ. P. 23, timely and validly exercises his or her right to be

excluded from the Settlement Class, but shall not include (a) persons whose requests for exclusion are disputed by Defendant pursuant to Article III, section 2(c) below, and the dispute is not overruled by the Court or withdrawn by Defendant, (b) persons whose communication is not treated as a request for exclusion pursuant to Article IV, section 4 and (c) persons whose requests for exclusion are not valid or are otherwise void pursuant to Article IV, section 4.

35.     "TCPA" means the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*.

36.     "Valid Claim Form" shall mean a Claim Form that:

(a)     is completely filled out by the Class Member or a person authorized by law to act on behalf of the Class Member with respect to a claim or right such as those at issue in this Action;

(b)     contains the address of the Class Member;

(c)     contains information reflecting that, to the best of the Class Member's knowledge or belief: (i) the Class Member received at least one Call made by or on behalf of ATTM on his or her cellular telephone; (ii) the Class Member had not consented to receiving such Calls from ATTM on his or her cellular telephone; and (iii) the Class Member was not a customer of ATTM for wireless services;

(d)     is executed and certified by the Class Member for whom the Claim Form is being submitted (or by his, her or their legal representative);

(e)     is timely, as judged by the fact that it is postmarked (if mailed to the Settlement Administrator) or time-stamped (if submitted to the Settlement Administrator via the Settlement Website) by the deadline set by the Court; and

(f)     is not successfully challenged.  A Claim Form shall be treated as successfully challenged under the standards set forth in Article III, section 2 below.

37.     All references to days shall be interpreted to mean calendar days, unless otherwise noted.  When a deadline or date falls on a weekend or a legal Court holiday, the deadline or date shall be extended to the next business day that is not a weekend or legal Court holiday.

38.     All references to "his," "her," and similar terms are intended to be gender-neutral, and apply equally to persons who are businesses, organizations, or other non-natural persons.

39.     Other terms are defined in the text of this Agreement and shall have the meaning given to those terms in the text.  It shall be the intent of the Parties in connection with all documents related to the Settlement that defined terms as used in other documents shall have the meaning given to them in this Agreement, unless otherwise specified.

### ARTICLE III - SETTLEMENT CLASS BENEFITS AND CLAIMS PROCEDURES

In consideration of a full, complete and final settlement of the Action, dismissal of the Action with prejudice, and the releases set forth in Article V below, and subject to the Court's approval, the Parties agree to the following relief.

1.  **Payment to Settlement Class Members:**

a.  ATTM shall be obligated to pay the forty-five million dollar ($45,000,000) Settlement Fund once this Settlement Agreement becomes Final.  ATTM shall have no payment obligations other than that Settlement Fund.

b.  Subject to the terms and conditions of this Agreement, if a Class Member submits a Valid Claim Form, he or she shall receive a Benefit Check in the amount of the Claimant Payment as described below.

c.  Each Class Member will receive as a Claimant Payment a pro rata distribution of the Settlement Fund, after accounting for Settlement Administration Costs, the Attorney's Fees

and Costs and the Incentive Award, for each Call listed as having been made to his or her

cellular telephone number in the records produced by ATTM in the Action.

        d.    No Class Member shall be entitled to take as the Claimant Payment an amount in

excess of five hundred dollars ($500) per Call, inclusive of any second distribution provided for

in Article III, section 3(d-e) below.  If money remains in the Settlement Fund after all Valid

Claim Forms are paid with a Claimant Payment in the amount of five hundred dollars ($500) per

Call, the Settlement Administrator shall distribute the remaining value from the Settlement Fund

to one or more nonprofit organizations mutually agreed upon by the Parties and approved by the

Court.

        e.    Notwithstanding any judgment, principle, or statute, there shall be no interest

accrued, owing, or paid by ATTM on the Claimant Payment, or on the Settlement Fund, or on

any other benefit available (or potentially available) under this Agreement.

    **2.**  **Disputed Claims**

        a.    The Settlement Administrator shall be responsible for receiving and keeping safe

and secure all Claim Forms and for administering the Settlement.  Following the later of the

Effective Date or thirty (30) days from the time set by the Court for the return of Claim Forms,

the Settlement Administrator shall examine each Claim Form and determine if the Claim Form

constitutes a Valid Claim Form eligible to receive the Claimant Payment described above.

        b.    The Settlement Administrator shall identify any persons who submit Claim Forms

that are incomplete and advise those persons in writing of the deficiencies in their Claim Forms,

providing them with 30 days in which to cure any such deficiencies.  In the event a person fails

to cure the identified deficiencies within the 30-day period, the Settlement Administrator shall

provide his or her contact information and the deficient Claim Form to Class Counsel, who may

call and follow up with the person.  The period to cure will be closed fifteen (15) business days

after Class Counsel receives this list of any deficient Claim Forms.

        c.    Within fifteen (15) business days of the end of the period to cure deficient Claim

Forms described in Article III, section 2(b) above, ATTM may challenge any claims determined

to be valid by the Settlement Administrator, by any form of written notice to Class Counsel

("Disputed Claims").  Such notice of any Disputed Claims shall void any Disputed Claim unless

Class Counsel disputes the challenge, in good faith, and in writing to ATTM within fifteen (15)

business days of the receipt of notice of Disputed Claims (or within such additional time as the

Parties may agree or the Court may permit).

        d.    Within fifteen (15) business days of the end of the period to cure deficient Claim

Forms described in Article III, section 2(b) above, Plaintiff or Class Counsel may challenge any

claims determined to be invalid by the Settlement Administrator as meeting the definition of a

Valid Claim Form by any form of written notice to the Settlement Administrator and ATTM

("Disputed Invalid Claims").  Such notice of Disputed Invalid Claims shall void a determination

of an invalid claim unless ATTM disputes the challenge in good faith, and in writing, to Class

Counsel within fifteen (15) business days of receipt of the Disputed Invalid Claim (or within

such additional time as the Parties may agree or the Court may permit).

        e.    Any Disputed Claims or Disputed Invalid Claims that cannot be resolved by the

Parties shall be submitted to the Court for resolution.

   **3.**   **Payment of Benefits**

        a.    Subject to the terms and conditions of the Agreement, after the Effective Date and

within sixty (60) business days of resolution of all Disputed Claims and Disputed Invalid Claims,

the Settlement Administrator shall mail or otherwise provide a Benefit Check in the amount of

the Claimant Payment to each Class Member who has returned or submitted a Valid Claim Form and who is not a Successful Opt-Out from the Settlement.

b.     The Benefit Checks shall be paid solely from the Settlement Fund, and shall be mailed to the address provided by the Class Member on his or her Valid Claim Form.

c.     All Benefit Checks issued under this section shall be void if not negotiated within ninety (90) calendar days of their date of issue, and shall contain a legend to that effect.  Benefit Checks issued pursuant to this section that are not negotiated within ninety (90) calendar days of their date of issue shall not be reissued.

d.     Subject to the terms and conditions of this Agreement, the Settlement Administrator shall, within one hundred twenty (120) days after the mailing of all Benefit Checks, distribute the value of all unclaimed or uncashed Benefit Checks through a second distribution to all Class Members who submitted a Valid Claim Form.

e.     The second distribution described above shall be distributed amongst all Class Members who submitted a Valid Claim Form on a prorated, per-Call basis.  To the extent the amount of the first distribution plus a second distribution results in a Claimant Payment exceeding $500 per Call then any second distribution will be limited to the amount required to total $500 per call between both distributions.  If the amount of the second distribution would result in an additional Claimant Payment to Class Members who submitted a Valid Claim Form of less than ten dollars ($10) per call, no such second distribution will occur.

f.     In the event no second distribution occurs, the Settlement Administrator shall distribute the value of all unclaimed and uncashed Benefit Checks to one or more nonprofit organizations mutually agreed upon by the Parties and approved by the Court.

g.    The Settlement Administrator's and the Parties' respective obligations with respect to the distribution of Benefit Checks, the Settlement Administration Costs, any award of Attorney's Fees and Costs, any Incentive Award, and the amount of unclaimed and uncashed Benefit Checks, if any, shall be performed reasonably and in good faith.  So long as they do, the Parties and the Settlement Administrator shall not be liable for erroneous, improper, or inaccurate distribution, and the Release and any judgment shall be effective, once this Agreement becomes Final.

**4.  Procedural Enhancements**

a.    ATTM has continued to implement procedures to reduce the prospects that it might call cellular telephone numbers through the use of an automated dialing system in the absence of consent.

## ARTICLE IV - SETTLEMENT PROCEDURES

**1.  Class Certification**

a.    For purposes of this Settlement Agreement and the proceedings and certification contemplated herein, the Parties stipulate and agree that Named Plaintiff, Joel Hageman, shall be appointed the Settlement Class Representative for the Settlement Class and his counsel from the law firms of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C. shall be appointed Class Counsel.  ATTM agrees not to oppose any motion of Bishop and Heenan, Keogh Law, Ltd., and Bingham and Lea, P.C. to be appointed Class Counsel.

b.    The certification of a class for settlement purposes is made without prejudice of the rights of ATTM to oppose class certification and/or to contest issues of liability, in this Action or any other action, should this Settlement Agreement be terminated or the Effective Date

not occur for any reason, and is not to be construed as an admission that the Settlement Class or any other class would be appropriately certified for purposes of litigation.

2. **Preliminary Approval**

   a.   As soon as practical after the execution of this Settlement Agreement, the Parties shall jointly move the Court for a Preliminary Approval Order substantially in the form of Exhibit 4 hereto.  ATTM agrees to support the entry of the Preliminary Approval Order, provided it is substantially in the form of Exhibit 4 hereto, but said agreement shall not be an admission by Defendant that a class and/or relief was appropriate in the Action or would be appropriate in any other matter.

   b.   Such Preliminary Approval Order shall, *inter alia*:

      i.   preliminarily approve the Settlement as fair, reasonable, and adequate, including the material terms of this Settlement Agreement;

      ii.   provisionally approve the Settlement Class for settlement purposes only;

      iii.   approve the proposed Notice and Claim Form in forms substantially similar to those attached hereto as Exhibits 1 and 3, and authorize their dissemination to the Settlement Class;

      iv.   approve the requirement that Class Members submit a Valid Claim Form in order to obtain the Benefit Check;

      v.   set deadlines consistent with this Agreement for mailing of the Notice and Claim Form, the submission of Claim Forms, the filing of objections, statements or other submissions by any person concerning the Settlement, the submissions of requests for exclusion from the Settlement Class, and the filing of papers in connection with the Final Approval Hearing;

vi.   conditionally designate Named Plaintiff as the representative of the Settlement

Class and Class Counsel as counsel for the Settlement Class;

vii.   prohibit all generalized notices or communications, whether by written

correspondence, advertisements, Internet postings, or other media, to Class

Members by the Parties about the Settlement or its terms other than as

specifically authorized by this Agreement except that nothing therein shall

impact Class Counsels' ability to discharge their attorney-client obligations to

members of the Settlement Class;

viii.   approve the Settlement Administrator; and

ix.   set a date for a Final Approval Hearing.

**3.   <u>Class Notice and Claim Form</u>**

a.   ATTM shall, within fifteen (15) business days of entry of the Preliminary

Approval Order, disburse to the Settlement Administrator two hundred fifty thousand dollars

($250,000) of the Settlement Fund to be used by the Settlement Administrator for preliminary

Settlement Administration Costs, including class notice expenses ("Initial Settlement

Administration Cost Disbursement").  The remainder of the Settlement Fund shall be disbursed

to the Settlement Administrator by ATTM within fifteen (15) days after the Agreement becomes

Final.  If this Agreement is terminated pursuant to its terms, or the Agreement does not become

Final, then Named Plaintiff, Class Counsel, Defendant, and Counsel for Defendant shall direct

the Settlement Administrator to, and the Settlement Administrator shall, refund immediately to

ATTM all amounts of the Initial Settlement Administration Cost Disbursement as are allocable

to administration activities and costs anticipated by the Settlement Administrator but not yet

undertaken or incurred by the Settlement Administrator as of the earlier of (a) the date of

16

termination of this Agreement, or (b) notification to the Settlement Administrator by Named

Plaintiff, Class Counsel, Defendant and/or Defendant's Counsel that the Agreement will not

become Final.

      b.   Any additional Settlement Administration Costs shall be paid exclusively from

the remainder of the Settlement Fund.

      c.   In the event of the entry of a Preliminary Approval Order, the Parties and the

Settlement Administrator shall prepare the list of Class Members to receive the Notice ("Class

Member List").  To prepare the Class Member List, the Parties shall provide the Settlement

Administrator with a list of the approximately 16,000 unique telephone numbers in the

Settlement Class, as they exist in ATTM's records.  The Settlement Administrator shall perform

a reverse look-up (and other investigations deemed appropriate by the Settlement Administrator)

of those telephone numbers using one or more vendors in an attempt to identify the owner of the

number at the time it received a Call and a current mailing address for the owner of the number.

After identifying mailing addresses through this process, the Settlement Administrator shall, by

using the National Change of Address ("NCOA") database maintained by the United States

Postal Service ("Postal Service"), obtain updates, if any, to the mailing addresses.

      d.   Within thirty (30) days following entry of the Preliminary Approval Order, the

Settlement Administrator shall mail the Notice, together with the Claim Form, to each Class

Member for whom a mailing address has been obtained through the process described in Article

IV, section 3(c) above.  Neither the Parties nor the Settlement Administrator shall have any

obligation to mail the Notice and/or Claim Form to any Class Member for whom no mailing

address was identified through the process set forth in Article IV, section 3(c) above.

e.    If any Notice sent under Article IV, section 3(d) above is returned by the Postal Service as undeliverable, the Settlement Administrator shall re-mail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail.  Other than as set forth above, neither the Parties nor the Settlement Administrator shall have any other obligation to re-mail Notices.

f.    Within sixty (60) days following entry of the Preliminary Approval Order, the Settlement Administrator shall cause to be published in one issue of *People* magazine a notice which contains text substantially the same as Exhibit 5 hereto.

g.    The Settlement Administrator shall have discretion to format the Notice and Claim Form in a reasonable manner to minimize mailing or administrative costs.  Before Notice is commenced, Class Counsel and Counsel for Defendant shall first be provided with a proof copy of any and all Notices (including what the items will look like in their final form), and shall have the right to inspect the same for compliance with the Settlement Agreement and with the Court's orders.

h.    After entry of the Preliminary Approval Order and prior to the date of the mailing of the Notice, the Settlement Administrator shall cause the Amended Complaint, Notice, Claim Form, and this Settlement Agreement to be made available on a dedicated Settlement Website to be administered by the Settlement Administrator.

i.    Claim Forms shall be returned or submitted to the Settlement Administrator, via U.S. Mail or via submission on the Settlement Website, by the deadline set by the Court or be forever barred.  The Parties will recommend that the deadline for the return or submission of Claim Forms to the Settlement Administrator should be twenty-one (21) days before the date of the Final Approval Hearing Date originally set by the Court.

**4.  <u>Right and Effect of Members of the Class to Opt-Out</u>**

   a.   Each member of the Settlement Class shall have the right to opt-out and not participate in the Settlement Agreement, as provided for in the Preliminary Approval Order.

   b.   The Notice shall inform each Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Agreement, if, within such time as is ordered by the Court ("Opt-Out Period"), the Class Member personally completes and mails a request for exclusion ("Opt-Out") to the Settlement Administrator at the addresses set forth in the Notice.

   c.   For a Class Member's Opt-Out request to be valid and treated as a Successful Opt-Out, it must (a) state his or her full name, address, and telephone number; (b) contain, to the extent known to the Class Member, the cellular telephone number as to which he or she seeks exclusion; (c) contain the Class Member's personal and original signature or the original signature of a person previously authorized by law, such as a trustee, guardian or person acting under a power of attorney, to act on behalf of the Class Member with respect to a claim or right such as those in the Action; and (d) state unequivocally the Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, not to participate in the Settlement, and/or to waive all rights to the benefits of the Settlement.  The Settlement Administrator shall promptly inform ATTM and Class Counsel of any Successful Opt-Outs.

   d.   Members of the Settlement Class who opt-out in a timely and valid manner shall receive no benefit or compensation under this Settlement Agreement and shall have no right to object to the proposed Settlement Agreement or attend the Final Approval Hearing.

   e.   A request for exclusion that does not comply with all of the foregoing, or that is not timely submitted or postmarked or that is sent to an address other than that set forth in the

notice, shall be invalid and the person serving such request shall remain a member of the

Settlement Class and be bound by this Settlement Agreement and the Release contained herein.

f.     The Parties will recommend that the Opt-Out period shall expire no less than

twenty-one (21) days before the Final Approval Hearing, and that Opt-Outs postmarked after the

expiration of this Opt-Out period shall not be treated as Successful Opt-Outs.

g.     No person shall purport to exercise any exclusion rights of any other person, or

purport (a) to opt-out Class Members as a group, aggregate, or class involving more than one

Class Member; or (b) to opt-out more than one Class Member on a single paper, or as an agent or

representative.  Any such purported opt-outs shall be void, and the Class Member(s) that is or are

the subject of such purported opt-out shall be treated as a Class Member.

h.     Prior to the Final Approval Hearing, Class Counsel, Counsel for the Defendant

and the Settlement Administrator shall create a comprehensive list of Successful Opt-Outs.  The

Parties shall, if possible, agree as to whether a communication from a Class Member is a request

to opt-out.  ATTM or Class Counsel may dispute an Opt-Out or purported Opt-Out, and the

presentation and resolution of such disputes shall be governed by the identical procedure set

forth with respect to Disputed Claims.

**5.  Inquiries from Settlement Class Members**

a.     It shall be the responsibility of the Settlement Administrator to respond to all

inquiries from members of the Settlement Class with respect to this Settlement except to the

extent that inquiries are directed to Class Counsel.  Class Counsel and ATTM shall have input

into any FAQs or other materials the Settlement Administrator may use to answer inquiries from

members of the Settlement Class and shall confer and assist the Settlement Administrator as it

requests.

6.  **Objections to the Settlement**

      a.   Any Class Member who is not a Successful Opt-Out and who wishes to object to the proposed Settlement must mail or hand-deliver written objections to the Settlement ("Objections") to Class Counsel and Counsel for the Defendant, at the addresses set forth in the Notice, and mail or hand-deliver the Objections simultaneously to the Court.  Objections may be filed by counsel for a Class Member.

      b.   Each Objection must (i) set forth the Class Member's full name, current address, and telephone number; (ii) identify the cellular telephone number of the Class Member that brings him or her within the scope of the Settlement Class; (iii) contain the Class Member's original signature or the signature of counsel for the Class Member; (iv) state that the Class Member objects to the Settlement, in whole or in part; (v) set forth a statement of the legal and factual basis for the Objection; and (vi) provide copies of any documents that the Class Member wishes to submit in support of his/her position.

      c.   The Parties will recommend that all Objections should be mailed or hand-delivered to the Court and mailed or hand-delivered to Class Counsel and Counsel for the Defendant no less than twenty-one (21) days before the Final Approval Hearing.  An objector is not required to attend the Final Approval Hearing.

      d.   Any Class Member who does not submit a timely Objection in complete accordance with this Agreement, the Notice and otherwise as ordered by the Court shall not be treated as having filed a valid Objection to the Settlement and shall forever be barred from raising any objection to the Settlement.

7. **<u>Final Approval Hearing</u>**

      a.   The Parties will recommend that the Final Approval Hearing be scheduled for a date at least ninety (90) days after the last date required under Article IV, section 3(d) above for the mailing of the Notice and Claim Form.

      b.   The Parties will file with the Court their briefs in support of final approval of the Settlement fourteen (14) days before the deadline for members of the Settlement Class to object to or opt-out of the Settlement.  The Parties shall file their responses to objections, if any, no later than fourteen days (14) days after the deadline for objections to the Settlement.

      c.   Any Class Member who wishes to appear at the Final Approval Hearing, whether *pro se* or through counsel, must, within the time set by the Court, mail or hand-deliver to the Court a notice of appearance in the Action, take all other actions or make any additional submissions as may be required in the Notice or as otherwise ordered by the Court, and mail that notice and any other such pleadings to Class Counsel and Counsel for the Defendant as provided in the Notice.  Unless so permitted by the Federal Rules of Civil Procedure or the Local Rules of the presiding Court, no Class Member shall be permitted to raise matters at the Final Approval Hearing that the Class Member could have raised in an Objection, but failed to do so.  Any Class Member who fails to comply with this Agreement, the Notice, and any other order by the Court shall be barred from appearing at the Final Approval Hearing.  The Parties shall recommend that all such motions be filed no less than twenty-one (21) days before the Final Approval Hearing.

      d.   The Parties will recommend that all other motions or applications, filed by or on behalf of Class Members, should be mailed and/or hand-delivered to the Court, Class Counsel, and Counsel for the Defendant no less than twenty-one (21) days before the Final Approval Hearing.

e.    The Parties shall ask the Court to enter a Final Approval Order and Judgment substantially in the form of Exhibit 2, attached hereto.  ATTM's request for entry of the Final Approval Order and Judgment shall not be an admission or concession by ATTM that a class and/or relief was appropriate in the Action or would be appropriate in any other matter.

f.    If and when the Settlement becomes Final, the Action shall be dismissed with prejudice, with the Parties to bear their own costs and attorney's fees not otherwise awarded in accordance with this Agreement.

g.    ATTM shall provide, or cause the Settlement Administrator to provide on ATTM's behalf, notice of the Settlement to the appropriate state or federal officials in accordance with the Class Action Fairness Act of 2005 ("CAFA").  *See* 28 U.S.C. § 1715.  The Parties agree that ATTM is permitted to provide such notice as required by law and that any notice by ATTM shall be done to effectuate the Settlement and shall not be considered a breach of this Agreement or any other agreement of the Parties.  No later than fourteen (14) days before the Final Approval Hearing, ATTM shall file or cause the Settlement Administrator to file with the Court a certification that it complied with the CAFA notice requirements and stating the date of such compliance.

### 8.  Litigation Stay

a.    Except as necessary to secure approval of this Settlement Agreement or as otherwise provided herein, the Parties shall take no further litigation steps in this Court.  In the event the Settlement Agreement is not approved or is terminated according to its terms, the Parties may resume litigation thirty (30) days after such event.

### 9.  Disapproval, Cancellation, Termination or Nullification of Settlement

23

a.    Each Party shall have the right to terminate this Settlement Agreement if: (i) the Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that is not substantially similar in form and substance to Exhibit 4 hereto); (ii) the Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs from Exhibit 2 hereto); (iii) the Final Approval Order and Judgment does not become Final by reason of a higher court reversing final approval by the Court, and the Court thereafter declining to enter a further order or orders approving the Settlement on the terms set forth herein.  ATTM shall have the right to terminate this Settlement Agreement if the Court awards Attorney's Fees and Costs and an Incentive Award which combined are in excess of fifteen million, twenty thousand dollars ($15,020,000).  If a Party elects to terminate this Settlement Agreement under this paragraph, that Party must provide written notice to the other Parties' counsel, by hand delivery or mail, within ten days of the occurrence of the condition permitting termination.

b.    This Agreement shall be terminable at the option of Defendant if Class Members with claims representing more than 2.5% of the total Calls covered by the Settlement Class become Successful Opt-Outs.

c.    Nothing shall prevent Named Plaintiff and/or ATTM from appealing any denial by the Court of Final Approval of this Settlement, and the Parties agree that, in the event of such an appeal, the case will be stayed pending the resolution of any such appeal.  The Parties agree they will continue to support and advocate for approval of the Settlement on appeal or in post-appeal proceedings, if there is such an appeal, to the same extent as they are bound herein to do so while the Action is before the Court.  In the event such an appeal results, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s)

24

whereby the Settlement is approved in a manner substantially consistent with the substantive terms and intent of this Settlement Agreement, and dismissing all claims in the Action with prejudice, and otherwise meeting the substantive criteria of this Agreement for approval of the Settlement, such order shall be treated as a Final Approval Order and Judgment.

     d.   If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement and all orders entered in connection therewith shall be rendered null and void; (ii) this Settlement Agreement, and all negotiations, proceedings, and orders relating hereto, shall be of no force or effect and shall not be used or referred to for any purpose whatsoever, and without prejudice to the rights of the Parties; and (iii) all Parties shall be deemed to have reverted to their respective status in the Action as of the date and time immediately preceding the execution of this Settlement Agreement and, except as otherwise expressly provided, the Parties shall stand in the same position and shall proceed in all respects as if this Settlement Agreement and any related orders had never been executed, entered into, or filed, except that the Parties shall not seek to recover from one another any costs and attorney's fees incurred in connection with this Settlement.

## ARTICLE V - RELEASE

**1.**  **Releases; Binding and Exclusive Nature of Settlement Agreement**

     a.   In connection with the Settlement, the Final Approval Order and Judgment shall provide that the Action is dismissed with prejudice as to Named Plaintiff and all members of the Settlement Class who did not execute a valid and timely opt-out pursuant to Article IV, section 4.

     b.   On the Effective Date, the Parties and each and every member of the Settlement Class who did not properly opt-out pursuant to Article IV, section 4 shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights, and remedies provided

hereunder.  No other action, demand, suit, arbitration or other claim may be pursued against

ATTM or the related entities released herein with respect to the Calls or released claims.

      c.    On the Effective Date and in consideration of the promises and covenants set

forth in this Agreement, (i) Named Plaintiff and each Class Member who is not a Successful

Opt-Out, and each of their respective spouses and children with claims on behalf of the Class

Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors,

next friends, co-borrowers, co-obligors, co-debtors, legal representatives, attorneys, agents and

assigns, and all those who claim through them or who assert claims (or could assert claims) on

their behalf (including the government in the capacity as *parens patriae* or on behalf of creditors

or estates of the releasors), and each of them (collectively and individually, the "Releasing

Persons"), and (ii) Class Counsel and each of their past and present law firms, partners, or other

employers, employees, agents, representatives, successors, or assigns (the "Counsel Releasing

Parties") will be deemed to have completely released and forever discharged the Released

Persons from any and all past, present and future claims, counterclaims, lawsuits, set-offs, costs,

losses, rights, demands, charges, complaints, actions, causes of action, obligations, or liabilities

of any and every kind, including without limitation (i) those known or unknown or capable of

being known, and (ii) those which are unknown but might be discovered or discoverable based

upon facts other than or different from those facts known or believed at this time, including facts

in the possession of and concealed by any Released Person, and (iii) those accrued, unaccrued,

matured or not matured, all from the beginning of the world until today (collectively, the

"Released Rights"), that arise out of or in any way relate or pertain to (a) Released Rights that

were asserted, or attempted to be asserted, or could have been asserted in the Action; (b) the use

by any or all of the Released Parties of any "automatic telephone dialing system," "automatic

dialer," "automated dialer," "dialer," and/or an "artificial or prerecorded voice" to make Calls to a cellular telephone number (to the fullest extent that those terms are used, defined, or interpreted under the TCPA, relevant regulatory or administrative promulgations, and case law) in connection with efforts to contact or attempt to contact Class Members, including but not limited to claims arising under or relating to (i) the TCPA, and any other similar state or federal law; (ii) statutory or common law claims predicated upon any alleged violations of the TCPA and/or any similar law; and (iii) statutory or common law claims predicated upon and/or arising from any or all of the Released Parties' use of any automated dialing system and/or artificial or prerecorded voice, including any claim under or for violation of federal or state unfair and deceptive practices statutes, violations of any federal or state debt collection practices acts (including, but not limited to, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*), invasion of privacy, conversion, breach of contract, unjust enrichment, specific performance and/or promissory estoppel; (c) claims asserted or that could have been asserted in the Action; and (d) any violation and/or alleged violation of state or federal law, whether common law or statutory, arising from or relating to the conduct at issue in this Action.  This Release shall be included as part of any judgment, so that all Released Rights shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

      d.   Upon the Effective Date, and in consideration of the promises and covenants set forth in this Agreement, the undersigned Class Counsel, for themselves, and each of his, her, or their present and former owners, predecessors, successors, partners, shareholders, agents (alleged or actual), experts, representatives, employees, and affiliates ("Attorney Releasors"), unconditionally and irrevocably remise, waive, satisfy, release, acquit, and forever discharge Defendant and the Released Parties from any and all right, lien, title, or interest in any attorney's

fee or award or any claim for reimbursement of costs in connection with the Action or the Released Rights, except as otherwise provided herein.

       e.    The Releases described in Article V shall apply with equal force as to both claims against ATTM and to claims against any OCA.

       **2.**    **Waiver of Unknown Claims and Assumption of Risk**

       a.    Named Plaintiff and each of the Releasing Persons acknowledges that he or she may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of Article V, but each of those persons expressly agree that, upon entry of the Final Approval Order and Judgment contemplated by this Settlement Agreement, he or she shall have waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, contingent or non-contingent claim with respect to the claims released pursuant to Article V, section 1 above, whether or not concealed or hidden, without regard to subsequent discovery or existence of such different or additional facts.

       b.    The Releasing Persons hereby expressly agree that, upon the Effective Date, each will waive and release any and all provisions, rights, and benefits conferred either (a) by Section 1542 of the California Civil Code or (b) by any law of any state or territory of the United States, or principle of common law which is similar, comparable, or equivalent to section 1542 of the California Civil Code, with respect to the claims released pursuant to Article V, section 1 above. Section 1542 of the California Civil Code reads:

> Section 1542. General Release; extent. A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

c.    On the Effective Date, all members of the Settlement Class who are not a Successful Opt-Out shall be deemed to have, with respect to the subject matter of the Action, expressly waived the benefits of any statutory provisions or common law rules that provide, in sum or substance, that a general release does not extend to claims which the person does not know or suspect to exist in the person's favor at the time of executing the release, which if known by the person would have materially affected its settlement with any other party.

d.    In entering into this Settlement Agreement, each of the Parties assumes the risk of any unknown or mistake of fact or law.  If either Party should later discover any new fact which might have been material to its decision to enter into this Agreement, or if any Party discovers that any fact upon which the Party relied in entering this Settlement Agreement is not true, or that the Party's understanding of the facts or law was incorrect, the Party shall not be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof.

## ARTICLE VI - ATTORNEY'S FEES AND INCENTIVE AWARD

1.  **Attorney's Fees and Costs**

a.    No later than fourteen (14) days before the deadline for members of the Settlement Class to object to or opt-out of the Settlement, Class Counsel may make written application to the Court for an award of Attorney's Fees and Costs incurred in the prosecution of the Action not to exceed, in the aggregate, one-third of the Settlement Fund (or fifteen million dollars ($15,000,000)).  The Parties agree that the Court (and only the Court) shall determine the final amount, if any, of the Attorney's Fees and Costs in this Action.

b.    ATTM agrees not to oppose such application, provided that it is in accord with the limitations set forth in this Article.  Defendant's agreement to not oppose the motion for Attorney's Fees and Costs shall not be construed as an admission, agreement, or concession by

Defendant that the Attorney's Fees and Costs applied for by Class Counsel are reasonable and/or appropriate.

      c.   All Attorney's Fees and Costs shall be paid out of the Settlement Fund.  In the event the Court's award of Attorney's Fees and Costs is less than one-third of the Settlement Fund, the difference shall remain as part of the Settlement Fund.  In the event the Attorney's Fees and Costs finally approved by the Court is less than the amount applied for, no other relief may be sought from the Court, so as to increase the award of Attorney's Fees and Costs or otherwise make up some or all of the shortfall.

      d.   Subject to the terms and conditions of this Agreement, within fifteen (15) days after the Effective Date, and only in the event that the Court has made an award of Attorney's Fees and Costs to Class Counsel, the Settlement Administrator shall distribute from the Settlement Fund the amount of any Attorney's Fees and Costs awarded (up to a maximum of one-third of the Settlement Fund) to Class Counsel.  Said distribution shall be made via wire as directed by Class Counsel.  Class Counsel shall submit to ATTM and to the Settlement Administrator such documentation (such as a W-9 form) as may be reasonably requested in order to accomplish the payment of Attorney's Fees and Costs contemplated herein.

      e.   Except as provided for in this Article, the Parties shall bear their own attorney's fees, costs, and expenses incurred in the prosecution, defense, or settlement of the Action.

    **2.**  **Payment to Named Plaintiff**

      a.   No later than fourteen (14) days before the deadline for members of the Settlement Class to object to or opt-out of the Settlement, Named Plaintiff and Class Counsel may make written application to the Court for an Incentive Award in an aggregate amount not to exceed twenty thousand dollars ($20,000) to be paid to Named Plaintiff for his service as a class

representative in the Action.  The Parties agree that the Court (and only the Court) shall determine the final amount, if any, of the Incentive Award in this Action.

b.    ATTM agrees not to oppose any such application provided that it is in accord with the limitations set forth in this Article.  ATTM's agreement not to oppose the application shall not be construed as an admission, agreement, or concession by Defendant that the Incentive Award is reasonable and/or appropriate.

c.    The Incentive Award shall be paid out of the Settlement Fund.  In the event the Incentive Award finally approved by the Court is less than twenty thousand dollars ($20,000), the difference shall remain as part of the Settlement Fund.  In the event the Incentive Award finally approved by the Court is less than the amount applied for, no other relief may be sought from the Court, so as to increase the Award or make up some or all of the shortfall.  Named Plaintiff shall submit to ATTM and to the Settlement Administrator such documentation (such as a W-9 form) as may be reasonably requested in order to accomplish the payment herein.

d.    Subject to the terms and conditions of this Agreement, within fifteen (15) days after the Effective Date, and only in the event that the Court has approved an Incentive Award to the Named Plaintiff, the Settlement Administrator shall distribute from the Settlement Fund the amount of any Incentive Award.  Said distribution shall be made out as directed by Class Counsel.

**3.  <u>Effect on Settlement</u>**

a.    The Parties agree that the rulings of the Court regarding the amount of Attorney's Fees and Costs and any Incentive Award, and any claim or dispute relating thereto, will be considered by the Court separately from the remaining matters to be considered at the Final Approval Hearing as provided for in this Settlement and that any determination in that regard

will be embodied in a separate order from the Court.  Any order or proceedings relating to the

amount of Attorney's Fees and Costs or the Incentive Award, including any appeals from or

modifications or reversals of any orders related thereto, shall not operate to modify, reverse,

terminate, or cancel the Settlement Agreement, affect the releases provided for in the Settlement

Agreement, or affect whether the Final Approval Order and Judgment becomes Final as defined

herein.

## ARTICLE VII - LIMITATIONS ON USE OF SETTLEMENT AGREEMENT

1. **No Admission**

   a.    Neither the acceptance by ATTM of the terms of this Settlement Agreement nor

any of the related negotiations or proceedings constitutes an admission with respect to the merits

of the claims alleged in the Action or in any other action, the validity or certifiability for

litigation of any claims that are or could have been asserted by any of the Settlement Class

members or other persons in the Action or in any other action, or the liability of ATTM or any

OCA in the Action or in any other action.  ATTM specifically denies any liability or wrongdoing

of any kind associated with the claims alleged in the Action.

2. **Limitations on Use**

   a.    This Settlement Agreement shall not be used, offered or received into evidence in

the Action, or any other action or proceeding, for any purpose other than to enforce, to protect, to

construe or to finalize the terms of the Settlement Agreement and/or to obtain the preliminary

and final approval by the Court of the terms of the Settlement Agreement, without a court order.

## ARTICLE VIII - MISCELLANEOUS PROVISIONS

1. **Claims Against Settlement Benefits**

a.   In the event a third party, such as a bankruptcy trustee, former spouse, or other third party has or claims to have a claim against any of the Claimant Payment made to a member of the Settlement Class, it is the responsibility of the Class Member to transmit the funds to such third party.

2.  **Confidentiality and Public Statements**

a.   There shall be no comments made to the press or any other disclosure by or through the Parties or their attorneys with intent that such disclosure will directly or indirectly result in notifying the media or advertising publicly about this Settlement or any of its provisions unless and until the Court has granted preliminary approval of the proposed Settlement.  If preliminary approval is denied, the Parties and their attorneys shall refrain from making any comments regarding the proposed Settlement for purposes of publication.  If preliminary approval is granted, the Parties and their attorneys shall refrain from initiating comments about the Settlement to any members of the press or any other person for the purposes of providing public comment regarding the Settlement except as required by the Court or pursuant to the terms of the Settlement.  However, if any Party or attorney is contacted by a member of the press or other person seeking a public comment on the Settlement, the Party or attorney may provide the inquiring party with the details of the Settlement as published pursuant to the Preliminary Approval Order, without additional editorial statements, expression of personal opinion or estimates of settlement valuation.  No Party shall disparage any other in any fashion.  In no event shall Plaintiff, Class Counsel, or their agents state or imply to any person that the Settlement represents an acknowledgement by ATTM or by any OCA of any wrongdoing or liability in this or any other matter.  Nothing in this provision shall be interpreted to limit representations that the Parties or their attorneys may make to the Court to assist it in its evaluation of the proposed

33

Settlement; nor shall it prohibit Plaintiff's counsel from communicating directly with a Class Member or Class Members once appointed as Class Counsel.  If a Party is required by a valid, enforceable subpoena or government information request to disclose the Settlement or information about the Settlement, such Party shall provide reasonable prior notice (to the extent permitted by applicable law) to the other Party to allow the other Party to seek to prevent such disclosure.  A party may also provide necessary and accurate information about the Settlement to its shareholders and other persons or entities as required by securities laws or other applicable laws or regulations.  The Parties agree that all information obtained from or provided by ATTM in connection with this Settlement Agreement and its negotiation shall be kept confidential and that such information shall be used only for the purposes allowed by the protective order and for no other purpose.

      b.    The Parties agree that nothing in this Agreement shall be construed to prohibit communications between ATTM or any other Released Person, on the one hand, and Class Members, on the other hand, in the regular course of ATTM's businesses or the business of any Released Person.

    **3.**  **<u>Counterparts</u>**

      a.    This Settlement Agreement and any amendments hereto may be executed in one or more counterparts, and either Party may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and both of which counterparts taken together shall constitute but one and the same instrument.  A facsimile or PDF signature shall be deemed an original for all purposes.

    **4.**  **<u>Integration Clause</u>**

a.    This Settlement Agreement, including the Exhibits referred to herein, which form an integral part hereof, contains the entire understanding of the Parties with respect to the subject matter contained herein.  There are no promises, representations, warranties, covenants or undertakings governing the subject matter of this Settlement Agreement other than those expressly set forth in this Settlement Agreement.  This Settlement Agreement supersedes all prior agreements and understandings among the Parties with respect to the settlement of the Action.  This Settlement Agreement may not be changed, altered or modified, except in a writing signed by the Parties and their counsel and approved by the Court, and may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

**5.  Execution of Documents**

a.    The Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Settlement Agreement.  The execution of documents must take place prior to the date scheduled for hearing on preliminary approval of this Settlement Agreement.

**6.  Independent Judgment and Advice of Counsel**

a.    Each party to this Settlement Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Settlement Agreement.  The Parties acknowledge, agree, and specifically warrant to each other that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement, and fully understand its legal effect.

**7.  Governing Law**

a.    The Settlement Agreement shall be construed, enforced, and administered in accordance with the laws of the State of Montana.

**8.  <u>Jurisdiction</u>**

a.    To the extent any dispute arises between the Parties regarding implementation of this Agreement, the Parties agree in the first instance to mediate the dispute before the Hon. Morton Denlow, before bringing the dispute (if unresolved after mediation) to the Court.  The Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to enforcement of the terms of this Settlement, and all Parties and Settlement Class members submit to the exclusive jurisdiction of the Court with respect to the enforcement of this Settlement and any dispute with respect thereto.

**9.  <u>Exhibits</u>**

a.    The exhibits to this Settlement Agreement are an integral and material part of this Settlement Agreement and are hereby incorporated and made a part of this Settlement Agreement.

**10. <u>No Assignments: Binding on Assigns</u>**

a.    Each Party represents, covenants, and warrants that he, she, or it has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any liability, claim, demand, cause of action, or rights that he or she herein releases. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, successors, and assigns.

**11. <u>Terms and Conditions Not Superseded</u>**

a.    Nothing in this Settlement Agreement abrogates, supersedes, modifies, or qualifies in any way any of the contractual terms and conditions applicable in the ordinary course

to the relationship between ATTM and its customers, or to the services provided by ATTM and purchased by its customers, except as expressly set forth herein.

**12. <u>Waiver of Compliance</u>**

      a.   Any failure of any Party to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation, covenant, agreement, or condition.  A waiver or failure to insist upon compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

**13. <u>No Collateral Attack</u>**

      a.   This Settlement Agreement shall not be subject to collateral attack by any Settlement Class members or their representatives any time on or after the Effective Date.  Such prohibited collateral attacks shall include, but shall not be limited to, claims that a Class Member's claim should have been heard or decided by another court or in another suit, that a Class Member's claim was improperly denied, that the payment to a Class Member was improperly calculated, and/or that a Class Member failed to receive timely notice of the Settlement.

**14. <u>Authorization</u>**

      a.   The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties to the terms and conditions hereof.

**15. <u>Settlement Class Member Signatures</u>**

      a.   It is agreed that, because the Settlement Class is so numerous, it is impractical to have each Class Member execute this Settlement Agreement.  The Notice will advise all

37

members of the Settlement Class and/or their representatives of the binding nature of the releases and of this Settlement Agreement, and in the absence of a valid and timely request for exclusion, such Notice shall have the same force and effect as if each Class Member executed this Settlement Agreement.

16. **No Tax Withholding or Advice**

a.    Class Members shall be solely responsible for reporting and payment of any federal, state, and/or local income or other tax or any withholding, if any, on any of the benefits conveyed pursuant to this Settlement Agreement.  Class Counsel and ATTM make no representations, and have made no representations, as to the taxability of the relief to Named Plaintiff and the other Class Members.  Class Members, just like Class Counsel, the Settlement Class Representative, and ATTM, are responsible for seeking their own tax advice at their own expense.

WHEREFORE, INTENDING TO BE BOUND, THE PARTIES, INDIVIDUALLY OR BY

THEIR DULY AUTHORIZED AGENTS AND UNDERSIGNED COUNSEL, HAVE SET

THEIR HAND AND SEAL AND EXECUTED THIS AGREEMENT AND RELEASE,

EFFECTIVE THE LAST DAY SIGNED BY ALL PARTIES HERETO.

PLAINTIFF:

Joel Hageman                                    Date: 9-26, 2014

DEFENDANT AT&T MOBILITY:

By: _____        Date: _____, 2014

REVIEWED AND APPROVED AS TO FORM AND RECOMMENDED AS TO

SUBSTANCE:

**ATTORNEYS FOR PLAINTIFFS**

BISHOP AND HEENAN

By: _____        Date: 9/26/, 2014
John Heenan

KEOGH LAW, LTD

By: _____        Date: 9-26, 2014
Keith Keogh

BINGHAM AND LEA, P.C.

By: _____        Date: 9-25, 2014
Benjamin Bingham

39

WHEREFORE, INTENDING TO BE BOUND, THE PARTIES, INDIVIDUALLY OR BY THEIR DULY AUTHORIZED AGENTS AND UNDERSIGNED COUNSEL, HAVE SET THEIR HAND AND SEAL AND EXECUTED THIS AGREEMENT AND RELEASE, EFFECTIVE THE LAST DAY SIGNED BY ALL PARTIES HERETO.

PLAINTIFF:

_____
Joel Hageman

Date: _____, 2014

DEFENDANT AT&T MOBILITY:

By: _____

Date: 9/29, 2014

REVIEWED AND APPROVED AS TO FORM AND RECOMMENDED AS TO SUBSTANCE:

**ATTORNEYS FOR PLAINTIFFS**

BISHOP AND HEENAN

By: _____
John Heenan

Date: _____, 2014

KEOGH LAW, LTD

By: _____
Keith Keogh

Date: _____, 2014

BINGHAM AND LEA, P.C.

By: _____
Benjamin Bingham

Date: _____, 2014

**ATTORNEYS FOR DEFENDANTS**

MAYER BROWN LLP

By: *Theodore A. Livingston*                    Date: 9-26, 2014
       Theodore A. Livingston