John Heenan
BISHOP & HEENAN
1631 Zimmerman Trail
Billings, MT 59102
T: (406) 839-9091
F: (406) 839-9092
John@bishopandheenan.com

Benjamin R. Bingham
Bingham & Lea PC
319 Maverick St.
San Antonio, TX 78212
T: (210) 224-1819
F: (210) 224-0141
Ben@binghamandlea.com
*Admitted Pro Hac Vice*

Keith J. Keogh
Keogh Law LTD
55 W. Monroe St. Suite 3390
Chicago, IL 60603
T: (312) 726-1092
F: (312) 726-1093
Keith@keoghlaw.com
*Admitted Pro Hac Vice*

Attorneys for Plaintiff and the Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| JOEL HAGEMAN, on behalf of himself and all others similarly situated, | ) ) ) ) | Case No.  CV-13-50-DLC-RWA |
| Plaintiff, | ) ) | **BRIEF IN SUPPORT OF** |
| v. | ) ) ) | ***UNOPPOSED* MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| AT&T MOBILITY LLC, | ) ) | |
| Defendant. | ) | |

Plaintiff, Joel Hageman, respectfully moves for final approval of the Class

Action Settlement Agreement ("Agreement") with Defendant AT&T Mobility,

LLC ("ATTM") that was granted preliminary approval by this Court on October 7, 2014[1] (Dkt. #57), and shows:

## I.  INTRODUCTION

After a class action case is granted preliminary approval and notice of its terms and binding effect are given to the class members, the Court may grant final approval to the proposed settlement only after a final approval hearing and after finding that it is fair, reasonable, and adequate. F.R.Civ.P. 23(e)(2).

The settlement before the Court easily meets the standard for final approval; it is fair, reasonable, and adequate.  It was negotiated at arm's-length between experienced class action lawyers on both sides, the settlement was facilitated with the assistance of a skilled mediator. In the two months since the settlement notice was mailed, no class members have objected or opted out[2]. Thus, in the Ninth Circuit, the proposed settlement enjoys a presumption of fairness and approval. *Rodriguez v. West Publishing Corp*., 2007 U.S. Dist. LEXIS 74767 a*24 (C.D. Cal. 2007) (internal citations omitted).   Therefore, the Parties request this Court grant final approval to the Agreement.

---

[1] The parties have agreed to remove from the release in Art. V, § 1 of the Settlement Agreement the following language: "including the government in the capacity as *parens patriae.*" The draft final order has been modified to reflect such.

[2] Class Members have until January 19, 2015 to claim in, opt-out or object.

## II.  OVERVIEW OF THE LITIGATION AND MEDIATION

The Telephone Consumer Protection Act[3] ("TCPA") makes it, "unlawful for any person within the United States … to make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…"  47 U.S.C. § 227(b)(1)(A)(iii).   For each violation of the act, the TCPA allows consumers to recover $500 per call, trebled for proven "knowing" violations of the TCPA.[4]

Plaintiff Joel Hageman brought this putative class action in April 2013, alleging on behalf of himself and a nationwide class that ATTM had violated the TCPA by placing calls to cellular telephone numbers without the prior express consent of the call recipients using an automatic telephone dialing system and/or an artificial or prerecorded voice message.  Plaintiff claims those calls violated 47 U.S.C. § 227(b)(1)(A)(3) and that the recipient of each call is therefore entitled to statutory damages for each call made.

ATTM contends that the calls made to members of the alleged class were lawful, because, *inter alia*, many members of the alleged class consented to receive such calls from ATTM by providing their cellular telephone number as an alternative

---

[3] 47 U.S.C. §227
[4] 47 U.S.C. §227

"can-be-reached" ("CBR") number for ATTM's customer accounts.  ATTM also contends that the dialing systems used by it and by the OCAs who acted on behalf of ATTM did not constitute "automatic telephone dialing systems" as that term is defined in the TCPA. 47 U.S.C. § 227(a)(1). In addition, ATTM contends that the TCPA, and especially its damages provisions, infringes its rights under the First and Fourteenth Amendments to the United States Constitution.

Moreover, ATTM contends that Plaintiff cannot represent a litigation class, nor achieve a contested certification of a class, since determining whether any class member gave "express consent" to be called on the cellphone CBR would require, among other things, an individualized inquiry into the circumstances surrounding how that CBR came to be listed as a CBR number in ATTM's records.  ATTM also contends that any calls it made to these CBR cellphone numbers were made in a good-faith belief that consent had been granted for each call and, furthermore, any errors that might have been made were inadvertent.  ATTM continues to deny liability in this case.

After the case had been pending for more than a year and discovery nearly closed, the Parties agreed to engage in mediated settlement discussions.  The Parties agreed to mediate in Chicago before the Hon. Morton Denlow of JAMS, an experienced mediator and former Magistrate Judge of the United States District Court for the Northern District of Illinois. In part Judge Denlow was chosen because

of his experience in mediation of TCPA cases. Prior to the mediation, the Parties exchanged expert reports and ATTM deposed Plaintiff's expert. Prior to the mediation the Parties exchanged detailed and formal mediation statements and exchanged informal position statements on particular nuances of the TCPA. The mediation took place on June 24, 2014. After a full day of negotiations, the Parties reached an agreement in principle on major points of the settlement. After the mediation the Parties continued to negotiate for another three months, finally producing the final Settlement Agreement now before the Court.

### III.  THE ADMINISTRATION OF THE CLASS ACTION SETTLEMENT

**A.      The Preliminary Approval Order.**

On October 7, 2014, this Court granted Preliminary Approval of the Class Settlement.  (Dkt. #57).  In the Preliminary Approval Order ("Order"), this Court found that the proposed terms of the settlement appeared to satisfy all of the elements of Federal Rules of Civil Procedures 23(a) and 23(b)(3).  *Id*.  The Order required the parties to provide the class members with notice, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set February 9, 2015 for the final approval hearing.

**B.      The Sending of Class Notice.**

Pursuant to Rule 23(e)(1), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." In the Order, the Court directed that:

"Written Notice will be provided to members of the Settlement Class by first-class U.S. mail using ATTM's records of telephone numbers it placed Calls to and/or that an OCA acting on its behalf placed Calls to, as well as a reverse look-up process and other investigations deemed appropriate by the Settlement Administrator, updated by the Settlement Administrator in the normal course of business.  All Notices shall be mailed within 30 days of the date of entry of this Preliminary Approval Order."  Preliminary Approval Order, ¶ 11.

The Notice procedures approved by the Court in its Order have been implemented by the Parties, satisfying the requirements of Fed. R. Civ. P. 23 and due process. Geraci Decl. ¶¶ 3-14.

The Claim Form and Notice approved by the Court provide adequate notice of the Settlement by "generally describ[ing] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation omitted). In addition, upon visiting the Settlement Website (www.ATTTCPASettlement.com), Class Members could obtain additional information about the litigation, the Claims procedure, and their rights to object to,

or opt-out of, the settlement.  As the Court already found in its Order, these Notice procedures are "the best practicable means available under the circumstances" and "reasonably calculated to provide notice to potential class members." *Wright v. Linkus Enterprises, Inc*., 259 F.R.D. 468, 475 (E.D. Cal. 2009) (approving similar Notice procedures designed "to ensure the most up-to-date and accurate addresses for Class Members," including "searches on all returned and undelivered mail").

After reviewing ATTM's records, Settlement Administrator KCC identified deliverable mailing addresses associated with the telephone numbers belonging to potential Class Members.  Geraci Decl. ¶¶ 4-9. The remaining telephone numbers could not be paired with valid addresses despite multiple attempts by KCC to process them through national mailing information databases and the skip tracing process. *Id*.  A Notice and Claim Form substantially in the form approved by the Court were delivered to these individuals in a series of mailings sent out beginning on November 6, 2014.  Any Notices returned as undeliverable have been run through a skip tracing process in an effort to locate their intended recipients.  Geraci Decl. ¶¶ 5-7.  Further, in an effort to reach potential Class Members whose address could not be obtained through other means, the Settlement Administrator, at the direction of the Parties, also commenced a live manual call campaigns.  Geraci Decl. ¶¶ 8, 10.

The Notice was also published in the Dec 5, 2014 issue of *People* magazine. With a readership of 46.6 million adults, *People* magazine has the largest audience

of any American magazine.[5] *People* is targeted to the consumer audience, as opposed to the Wall Street Journal's business audience or USA Today's airport audience, both of which often contain class action notices. Further, from the day the Motion for Preliminary Approval was filed in this case, the settlement has been widely reported. See, e.g*.,* TopClassActions.com; Law360.com, National Law Journal, JereBeaslyReport.com.

Further, in the third week of December, 2014, the Settlement Administrator, at the direction of the parties, commenced a second manual call campaign directed to those who had been called before but who had not yet filed claims. See, Geraci Decl. ¶ 8.

Finally, on December 29, 2014 the parties sent a reminder notice to those Class Members for whom they had valid addresses for, but had yet to submit a claim. The notice in substance reminded the class members that they had until January 19, 2015 to get their claim filed or post-marked.  Geraci Decl. ¶ 11.

Rule 23's advisory committee note states that the "mandatory notice pursuant to subdivision (c)(2) … is designed to fulfill requirements of due process to which the class action procedure is of course subject." Fed.R.Civ.P. 23(d)(2) advisory committee's note (citing, *Mullane*, 339 U.S. 306 (additional citations omitted). The

---

[5] http://en.wikipedia.org/wiki/People_(magazine)

8

notices procedures used in this case fulfill the requirement of due process. The parties actually went above and beyond the required notice in an effort to make sure all identifiable class members had an adequate opportunity to file their claim or otherwise exercise their rights. The number of claims filed and the number of website visits testify to the effectiveness of the notice.  See Geraci Decl. ¶ 17.

## C.    Claims Procedures.

Class members were provided with an easy and contemporary method of filing claims. Class members could file their claims electronically, could download the form and mail in the claim, or could mail in the claim form that they received in the notice package in the mail. No documentation was needed and the claim form was simple and easy to complete.  Class members had more than two months to submit their claims.

## IV.  THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT

Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The Court upon consideration of the Motion for Preliminary Approval found that for settlement purposes, all of the requirements for class certification had been met. (Dkt. #57). Plaintiff urges the Court to adopt those findings in its final order if this settlement is approved.

**A.    Settlement Standards of Review, Presumptions and Factors.**

Once the court certifies a settlement class, approval of the settlement terms rests in the sound discretion of the district court. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Settlement approval is reviewed under the "clear abuse of discretion" standard. *Rodriguez, et al v. West Publishing*, 563 F. 3d 948, 963 (9th. Cir. 2009).

When reviewing complex class action settlements, there is "a strong judicial policy that favors settlements." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Thus, as the Ninth Circuit has "emphasized," that the "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit [required under Fed. R. Civ. P. 23(e)] "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez*, 563 F.3d at 965.

In approving a class action settlement, courts need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id*. (internal citations omitted). Rather, courts are directed to "put a good deal of stock in the

product of an arms-length, non-collusive, negotiated resolution." *Id.* (internal citations omitted).

Under Federal Rule of Civil Procedure 23(e), the settlement, taken as a whole, must be fundamentally fair, adequate, and reasonable to the Class. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). Rule 23(e)'s primary concern is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation (4th) § 21.61, at 480 (2004).

When evaluating the fairness, adequacy and reasonableness of a proposed settlement, a district court's discretion is guided by consideration of some or all of the following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel, (7) the presence of a governmental participant and (8) the reaction of class members to the proposed settlement. *In re Bluetooth Headset Prods. Liab.*

*Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *Rodriguez,* 563 F. 3d at 965.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice,* 688 F.2d at 625.

B.     **Application of the Approval Factors.**

1.     **The Strength of Plaintiff's Case**.

There is no question that ATTM or those collecting for it called the cell phones of the Class Members, and there is also no question that in the proper circumstances the TCPA allows $500 per call in statutory damages.[6]  However, Defendant did not stipulate that Plaintiff's claims were iron-clad. Only certain types of calls made by certain types of calling equipment in certain circumstances are covered by the TCPA.  In this case ATTM claimed none of the calls made were covered by the TCPA because the equipment it used was not covered by the TCPA and/or because ATTM had the circumstance of "express consent" from those called when it dialed the calls in question, which in turn takes the calls out of the purview of the TCPA. ATTM further argued that even if it's calling equipment was covered, the issue of express consent was individualized and so a class could never be certified.

---

[6] Although the TCPA provides for trebled damages for knowing violations, "courts do not traditionally factor treble damages into the calculus for determining reasonable settlement value. *Rodriguez*, 563 F.3d at 963 (internal citations omitted).

**2.     The risk, expense, complexity, and likely duration of further litigation**.

While the case was commenced in good faith and with a reasonable factual basis for believing it had merit, Plaintiff and his counsel were a long way into the case, heavily invested, and at substantial risk before they concluded that this was a substantial case.   The settlement was reached only after many months of thorough and substantial discovery that included written discovery requests to Defendant and over 40,000 pages of responsive documents, spreadsheets, expert reports and analysis of the Defendant's data. Had the Parties not reached agreement to settle, ATTM would have continued to vigorously defend both on the merits and as to propriety of the class action procedure. While ATTM contends that it ultimately would have prevailed on the merits of Plaintiff's claims, or at least defeated certification, it also faced significant risks associated with continued litigation.

The Settlement Agreement strikes an appropriate balance that fairly accounts for these risks by providing the Settlement Class with a guaranteed recovery while protecting ATTM from the maximum statutory damages to which ATTM was exposed on Plaintiff's claims. When the Parties reached an agreement in principle to settle, the parties had undertaken significant fact discovery and little certification fact-related discovery remained to be conducted. The parties have yet to litigate (among other things) whether or the extent to which class certification would be appropriate. ATTM also indicated that before certification it would move to stay the

case pending the outcome of certain regulatory considerations, as some other courts have done in TCPA class action cases. *See, e.g., Higginbotham v. Hollins*, No. 14-cv-2087, 2014 U.S. Dist. LEXIS 85584 (D. Kan. June 24, 2014) (staying litigation pending FCC's consideration of and rulings on TCPA petitions and citing cases granting similar stays). *See also* Michael O'Rielly, FCC Commissioner, TCPA: <u>It is Time to Provide Clarity</u>, FCC Blog (Mar. 25, 2014) (available at <u>http://www.fcc.gov/blog/tcpa-it-time-provide-clarity</u>) (asserting that "the FCC needs to address this inventory of petitions as soon as possible" as it has the "opportunity to answer important questions and much needed guidance on a variety of TCPA issues, including . . . whether consent can be inferred from consumer behavior or social norms . . . .").

Moreover, even if Plaintiffs prevailed on those issues, ATTM would have likely pursued an interlocutory appeal, resulting in further costs and delay to the class entitled, in the opinion of their counsel, to benefits. There is no real question that but for this settlement, continued litigation in this case likely would have become both costly and protracted. "Settlement at this early stage in the proceedings saves substantial attorneys' fees, costs and expenses for all parties." *Gomez v. H & R Gunlund Ranches, Inc.*, 2011 WL 5884224, at *4 (E.D. Cal. Nov. 23, 2011). This is another factor that "strongly favors final approval of the class action settlement." *Id*.

As Plaintiff continued to push for a per call payment, Defendant continued to argue that the prospective damages under the TCPA are constitutionally infirm. This threat was taken seriously by Plaintiff in that this very defendant, using the very same legal counsel, had recently been to the United States Supreme Court and won a landmark decision against consumers, *AT&T Mobility v. Concepcion*, 563 U.S. 321 (2011). Further, and although Plaintiff and Class Counsel were confident in the strength of this case, there were risks inherent to litigation and the various defenses available to Defendant, including the risk that the claims could not be resolved on a class-wide basis because the individual issues arguably eclipsed the common issues of the class and many putative class members agreed to individually arbitrate their claims. *Compare Meyer v. Portfolio Recovery Associates*, 696 F.3d 943 (9th Cir. 2012) (upholding certification of TCPA class) with *Jamison v. First Credit Servs., Inc.*, No. 12 C 4415, 2013 WL 1248306, at *15-17 (N.D. Ill. Mar. 28, 2013) (upholding denial of certification of TCPA class).

Plaintiff also understands that there is a substantial risk of losing inherent in any jury trial. Even if Plaintiff prevailed at trial, ATTM would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for Class Members. *See Fulford v. Logitech, Inc.,* No. C-08-2041, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010) ("[L]iability and damages issues—and the outcome of any appeals that would likely

follow if the Class were successful at trial—present substantial risks and delays for Class member recovery.").

> **3.    The Risks Associated With Obtaining And Maintaining Class Certification Also Weigh In Favor Of Settlement**.

While Plaintiff alleges that his claims present several common issues of law and fact and that class certification would be appropriate, a number of courts have found class treatment for lawsuits brought under the TCPA to be "inappropriate and unmanageable." *Levitt v. Fax.com*, 2007 WL 3169078, at *3-4 (D. Md. May 25, 2007) (collecting cases). There was a risk that the Court could decline to certify this case as a class action. Courts are split and have either granted or denied class certification in robo-calling and robo-faxing cases brought under the TCPA depending upon the facts of the case. *Compare*, *e.g., LaBou v Cellco Partnership dba Verizon Wireless,* 2014 U.S. Dist. Lexis 26974 (E.D. Cal. March 3, 2014) (certification denied in because non-customer claims were not typical of claims of customers who were included in class definition); *Kavu, Inc. v. Omnipak Corp*., 246 F.R.D. 642 (W.D. Wash. 2007) (granting class certification); *Kenro, Inc. v. Fax Daily, Inc*., 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (denying class certification); *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc*., 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"); *Versteeg v. Bennett, Deloney & Noyes*, P.C., 271 F.R.D. 668, 674 (D.

Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number") (internal citations omitted); *Jamison v. First Credit Services, Inc*., 2013 WL 1248306 at *13 (N.D. Ill. March 28, 2013) (declining to certify TCPA class where individualized review would be required to "determin[e] whether any particular class member gave Honda his or her cellphone number"); *Green v. Service Master*, 2009 WL 1810769 at *2 (N.D. Ill. 2009) ("[T]he question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification.") (internal citations omitted); *Saf-T-Gard International, Inc. v. Wagener Equities, Inc*., 251 F.R.D. 312, 315 (N.D. Ill. 2008) (holding that where "some number of faxes were sent on defendant's behalf (with or without defendant's explicit authorization), potentially to tens of thousands of recipients . . . reflects precisely the type of 'organized program' that lends itself to a common adjudication of the consent issue") (internal citations omitted); *Agne v. Papa John's Intern., Inc.,* 286 F.R.D. 559, 567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

Where there is a "substantial risk that Plaintiff would not be able to obtain and maintain class certification. . . [t]his factor weighs in favor of approval." *Browning*

*v. Yahoo! Inc.,* 2007 WL 4105971, at *11 (N.D. Cal. Nov. 16, 2007); *Ko v. Natura Pet Prods., Inc.,* 2012 WL 3945541, at *4 (N.D. Cal. Sept. 10, 2012) ("[g]iven the difficulties and risks in obtaining and maintaining class certification . . . the Court finds that this factor weighs in favor of approving the settlement").

### 4.    The Amount Offered in Settlement.

With the Court's approval of this settlement, Class Members will receive a substantial financial award. Those who submit valid Claim Forms could receive a lump-sum payment of up to $500 per call, depending on the number of claims submitted.  Such a recovery is well within a "reasonable range for settlement . . . considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez*, 563 F.3d at 965 (citing Manual for Complex Litig. (Fourth) § 21.62, at 316 (2004)). To begin, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628 (citations omitted); accord *Kakani v. Oracle Corp.*, 2007 WL 2221073, at *3 (N.D. Cal. Aug. 2, 2007) (granting preliminary approval of settlement award for 12.3% of maximum possible recovery); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974) (affirming approval of award representing 12% of maximum possible recovery), abrogated on other grounds by *Goldberger v. Integrated Res.,Inc.*, 209 F.3d 43 (2d Cir. 2000). The recovery

available to the Settlement Class here is much higher than in any of these cases—it could well equal what a successful plaintiff would receive in an individual case where he or she obtained the statutory damages available under the TCPA.

Moreover, the compensation scheme available to Class Members under the Settlement Agreement falls squarely within a range of similar "claims made" settlements in TCPA cases approved as fundamentally fair, reasonable, and adequate by district courts within the Ninth Circuit. *See, e.g., Gardner v. Capital Options*, No. C07-1918, Dkt. #32 (W.D. Wash. May 29, 2009) (Approving settlement agreement providing for a payment of $170 to each class member); *Baron v. Direct Capital Corp.*, No. C09-00669, Dkt. #44 (W.D. Wash. Aug. 3, 2010) (Approving settlement agreement providing for $135 to each class member); *Hovila v. Tween Brands, Inc.*, No. C09-00491, Dkt. #141 (W.D. Wash. Apr. 24, 2012) (Approving settlement agreement providing for $20 or $45 in merchandise to each class member).

The Settlement Agreement provides that each Class Member who submitted a valid claim form would receive a pro rata share of $45,000,000 less Settlement Costs. This is not a reversionary settlement and not a penny is going back to AT&T. Class members who submit claims can expect to receive at or near the full $500 per call contemplated under the TCPA. Thus, the expected recovery per claimant is likely to significantly exceed other recent TCPA settlements and result in a recovery for class members which would exceed what they could reasonably expect had they

found a lawyer to prosecute their claims individually.

| CASE | # of CLASS MEMBERS | SETTLEMENT AMOUNT |
|---|---|---|
| **Hageman v. ATTM** | **16,000** | **$45,000,000** |
| Capital One[7] | 16 million | $75,500,000 |
| HSBC[8] | 10 million | $40,000,000 |
| Chase Bank[9] | 7 million | $34,000,000 |
| Bank of America[10] | 7 million | $32,000,000 |
| Sallie Mae[11] | 8 million | $24,000,000 |
| Wells Fargo[12] | 5.8 million | $17,100,000 |
| Discover[13] | 8 million | $8,700,000 |

Other than this case, none of the above settlements provide for a recovery *per call*, they are per person settlements. The Parties do not criticize these settlements nor the courts that have approved them.   TCPA class cases are complicated, expensive, time-consuming and risky. For example, one of plaintiff's counsel is also counsel of the class and liaison counsel for the Capital One MDL.  While the Capital One settlement does not provide for a per call recovery, the Capital One class consisted of customers, unlike here, for which Capital One had strong contractual consent defense to those class members.  "[W]here there is significant litigation risk, a settlement will reflect that risk by producing a lower settlement amount compared to the maximum verdict that could be obtained after a trial on the merits." *Harris v.*

---

[7] *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Doc.#951)
[8] *Wilkins v. HSBC* 14-cv-190 (N.D. Ill, 2014 pending)
[9] *Connor v. JPMorgan Chase*, et al, 10-cv-1284 (S.D. Cal. Dkt. #107, Aug. 7, 2014)
[10] *Rose v. Bank of America*, 2014 U.S. Dist. Lexis 121641 at *30 (N.D. Cal., 2014)
[11] *Arthur v. Sallie Mae*, 10-cv-00198 (W.D. Wa. Dkt. # 259, Sept. 10, 2012)
[12] *Malta v FHLMC, et al*, 10-CV-1290 (S.D. Cal., Dkt #76 June 6, 2013)
[13] *Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal. Dkt. # 96, Mar. 10, 2014)

*Vector Marketing Corp.*, 2011 WL 4831157, at *5 (N.D. Cal. Oct. 12, 2011).

In this case, ATTM asserted defenses similar to those asserted in many other TCPA cases, that the telephone equipment used by it and its collectors did not qualify as "automatic telephone dialing system" as that term is used in the TCPA. ATTM threatened to request this Court to stay the proceedings pending regulatory consideration, as other courts have done under the "primary jurisdiction" theory. ATTM could also point the court to numerous cases where TCPA cases were not certified. Given the substantial risk of going forward, the settlement achieved in this case represents a remarkable result for the Class; the amount offered in settlement approximates the recovery class members might expect if they could find and pay a lawyer to pursue their individual case.

### 5. The Extent of Discovery Prior To Settlement Demonstrates That The Parties' Decision To Settle Was Well Informed.

At about the same time as the mediation, the deadline in the September, 2013 Scheduling Order (Dkt. #38) for class certification discovery nearly closed. Just prior to the June 2014 mediation the parties were producing expert reports and experts for deposition. Beginning in October, 2013, ATTM began producing more than 40,000 pages of documents in response to Plaintiff's formal and informal discovery requests. Among the documents ATTM produced were more than a dozen voluminous spreadsheets which in various ways summarized millions of bits of relevant account information and calling data.  The settlement was reached only after

many months of thorough and complex discovery that included written discovery requests to Defendant and over 40,000 pages of responsive documents, spreadsheets, expert reports and analysis of Defendant's data, deposition of Plaintiff, his expert and Defendant's Rule 30b(6) witnesses.

Specifically, Defendant produced data and documents regarding Plaintiff's claims and Defendant's policies, practices, and procedures concerning the use of its dialers, prerecorded messages, and the number of persons that may have been called within the scope of this action. Defendant served Plaintiff with written discovery, to which Plaintiff responded and Defendant deposed Plaintiff Hageman in Montana. Plaintiff deposed Defendant's corporate representative in Chicago, after which Defendant deposed Plaintiff's expert testifying witness in South Carolina. As class related discovery was about to close, the parties participated in a JAMS administered mediation before United States District Court Magistrate Judge Morton Denlow (Ret.). Prior to the mediation the Defendant provided an expert affidavit which substantially challenged some of Plaintiff's fundamental positions. The parties also exchanged extensive mediation briefs and exchanged informal position statements on particular nuances of the TCPA. While the mediation resulted in an agreement in principle, it was also followed by three months of negotiations over the final terms and conditions of the settlement.  In short, the Parties vigorously litigated the case and thoroughly investigated the facts prior to agreeing to a settlement.

The Parties' participation in formal and informal discovery procedures as described above ensured "that counsel had a good grasp on the merits of their case before settlement talks began." *Rodriguez*, 563 F.3d at 967. This factor provides additional support for approval, as it indicates "that the Parties exchanged sufficient information to make an informed decision about settlement." *Bellows v. NCO Fin. Sys., Inc*., 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) 14, (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

**6.   The Recommendations Of Counsel To Approve The Settlement Should Be Afforded Significant Weight.**

It is important for the Court to give "thorough consideration" to the "experience and views of counsel" who propose a class action settlement. *Churchill Village*, 361 F.3d at 576-577. Because "'[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation,'" the Court should "weigh this factor in favor of approval." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec. Litig.,* 47 F.3d at 378). Indeed, "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (citation omitted), aff'd, 25661 F.2d 939 (9th Cir. 1981).

Here, both Parties are represented by counsel with significant experience in consumer and class action litigation. Indeed, appointed Class Counsel, particularly

Keith Keogh, have litigated numerous class actions including cases involving the legality of automated telephone dialing systems and prerecorded messages under the TCPA. Accordingly, the recommendation of Class Counsel and counsel for ATTM that the Settlement Agreement is fundamentally fair, reasonable, and adequate "should be given a presumption of reasonableness. Attorneys, having an intimate familiarity with a lawsuit . . . are in the best position to evaluate the action, and the Court should not without good cause substitute its judgment for theirs." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (internal citation omitted).

### 7.     The Presence of a Governmental Participant.

In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711 et seq., ATTM has sent written notice of the Parties' proposed Settlement—including a copy of the Settlement Agreement itself—to the Attorneys General of all fifty States. See 28 U.S.C. §1715(b). Such notice was provided on or about October 8, 2014. No State has sought to intervene in these proceedings or otherwise object to the Settlement. "Because numerous governmental agencies were given notice of the settlement and have not objected, this factor weighs in favor of the settlement." *Grannan v. Alliant Law Group, P.C.,* 2012 WL 216522, at *8 (N.D. Cal. Jan. 24, 2012); accord *Ko*, 2012 WL 3945541, at *5; *Bellows*, 2008 WL 5458986, at*8.

### 8.     The Reaction of the Class Members to the Proposed Settlement.

As of the date of this filing, no class members have opted out and no class members have objected to the settlement or the requested fees.  The reaction of the class members supports the final approval of this settlement.

## V.  CONCLUSION

For the reasons set forth above, and for the additional reasons set forth in the Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. #56), the parties respectfully request that the Court enter the Parties' proposed Final Approval Order and Final Judgment submitted with this motion that:

1.      Approves the Parties' Settlement Agreement as fair, reasonable, and adequate;

2.      Approves the Parties' Notice procedures as reasonable and sufficient to meet due process;

3.      Certifies the Settlement Class for purposes of this settlement; and

4.      Fully and finally concludes this matter in accordance with the Parties' Settlement Agreement.

DATED this 5th day of January, 2015.

Respectfully Submitted,

*/s/ John Heenan*
John Heenan
BISHOP & HEENAN
1631 Zimmerman Trail
Billings, MT 59102